### HOSTETTER CO. v. SOMMERS et al.

#### (Circuit Court, S. D. New York. December 21, 1897.)

**TRADE-MARKS—UNFAIR COMPETITION.**

Complainant had long sold "Hostetter's Bitters" in bottles of a peculiar form and size, and established a large business therein. Defendants sold in demijohns spurious bitters, closely resembling the real article, labeling them "Hostetter's Bitters," with intent that they should be sold by the drink at the bar as "Hostetter's Bitters." *Held*, that this was unfair competition, and should be enjoined.

This was a bill in equity by the Hostetter Company against Isaac Sommers and Louis Joseph to restrain alleged unfair competition in trade.

A. H. Clarke, for complainant.

Wm. J. Townsend, for defendants.

TOWNSEND, District Judge. The following allegations of the bill herein are admitted, namely, that complainant corporation is the compounder of a medical preparation which has been sold by it for

more than 30 years in square amber-colored bottles only, marked and labeled as "Dr. J. H. B. Hostetter's Stomach Bitters"; that said bitters are known to the trade and to the public as "Hostetter's Bitters," and have been extensively sold; and that the good will of said business is of great value to complainant. The bill charges the defendants with fraud and unfair dealing in selling as its bitters another, counterfeit stomach bitters, in bulk, so compounded as to resemble in color, taste, and smell the bitters of complainant, and in suggesting to and advising intending purchasers to procure the empty bottles of complainant, with its labels thereon, and to refill them with said imitation bitters, and sell them as complainant's bitters. The answer of defendants is a general denial. Their witnesses deny most of the material statements of complainant's witnesses. From the mass of testimony, given for the most part by interested witnesses, some of whom are discredited by inconsistencies and others by improbabilities, I find the following facts: On several occasions the agents of complainant called at defendants' place of business, and, representing themselves as liquor dealers or their agents, stated that they wished to purchase liquors and various kinds of bitters, including Hostetter's Bitters, which they wished to purchase by the gallon. Defendant Joseph, who is a partner of defendant Sommers, on four occasions sold to complainant's agent demijohns, each containing a half gallon of counterfeit bitters, labeled them "Hostetter's Bitters," described them in the invoices as "Hostetter's Bitters," and so entered them in the sales book. After the second or third purchase complainant's agent asked the defendant Joseph "which was the best way to sell Hostetter's Bitters to make the most money." Joseph told him to put them in Hostetter bottles, and sell them over the bar, the same as his other customers did. After all of said purchases had been made, complainant's agent asked Joseph for empty Hostetter bottles. Joseph told him they did not have any, but directed him to two or more dealers in bottlers' supplies, where he said he (complainant's agent) could get a general supply of labels and bottles. One of these dealers (Westermann) admitted that, if he had second-hand bottles, he guessed he would sell them with old labels on, if people wanted them, but denied that he ever sold Hostetter bottles. In view of the fact that Joseph's testimony as to said conversation is unsupported by other evidence, and, as to various material statements, is contradicted by four witnesses, it must be considered as discredited. It is unnecessary, however, to rest the decision of this case upon any uncertain testimony. Upon the facts clearly proved, a case of infringement is shown, within the rule laid down in Hostetter Co. v. Brueggeman-Reinert Distilling Co., 46 Fed. 188, and Hostetter Co. v. Van Vorst, 62 Fed. 600. It is established that defendants sold to complainant's agents, under the name "Hostetter's Bitters," a spurious article, so closely resembling the real article as to deceive an ordinary customer, with the intent that it should be resold by the drink, over the bar, in the usual way, as Hostetter's Bitters, in fraud of the rights of complainant and of the public. The law is not, as claimed by defendants' counsel in his brief, that "under complainant's trademark it is entitled to no protection in the sale of bitters, unless such

bitters are sold in bottles resembling the bottles of complainant, and under its labels and trade-mark, or imitations thereof." The complainant is entitled to protection against the appropriation of its trade-mark by any and all unfair and dishonorable means, and a court of equity has power to grant such protection whenever it is satisfied that an attempt has been made by ingenious subterfuges to invade the rights of an owner of a trade-mark, either by a conspiracy with others to deprive him of such rights, or by misrepresentation in the sale of a spurious article so manufactured as to deceive the public. In the sharp contest between the individual manufacturer, who strives to acquire and retain the fruits of industry and honesty, and the field of keen rivals, seeking to wrest from him the prize of the public good will, the inventive ingenuity of the infringer has conceived a great variety of devices for evading the established rules of fair dealing. Among the later of these devices are acts professedly within legal limitations, but manifestly designed to be afterwards so made available by other acts as to deceive the public. In such cases courts of equity, looking beyond the original acts, and finding that their ultimate object and effect were to enable and induce the retail seller of a fraudulent imitation to palm it off on an unsuspecting public for the genuine article, and thus to contribute to the infringement upon the rights of the original owner, have not hesitated to apply the remedy. The scheme in the present case, according to the testimony of defendants, appears to have been that the manufacturer of the bogus bitters should sell them to the wholesaler in demijohns labeled "Stomach Bitters"; that the wholesaler should change the labels to "Hostetter's Bitters," and invoice and ship them under said latter name to the retail dealer, and that the retail dealer should sell them by the drink as "Hostetter's Bitters" when "Hostetter's Bitters" were called for at the bar, from bogus bottles or otherwise, as he chose. The claim of defendant Joseph that he stated to complainant's agent that the bogus bitters were stomach bitters, and that he could not buy Hostetter's Bitters in bulk, is immaterial in view of his admission that he marked and invoiced them to the purchaser as "Hostetter's Bitters," because complainant's agent told him "his brother-in-law up there didn't know anything about the business, and there was a call up there for Hostetter Bitters," and further said, "In the country they didn't know the difference, and they are more salable as Hostetter Bitters." Therefore, upon defendants' admissions, they sold as Hostetter's Bitters a bogus compound which looked, tasted, and smelled like Hostetter's Bitters to the unwary purchaser of a drink at the bar. Defendant Joseph said he marked the demijohn "Hostetter's Bitters" because they were for the country, and in order that the purchaser might thereby "make all the money he could out of them." According to complainant's contention, sufficiently supported by the proofs, said sale was accompanied by the suggestion that, in order to make the most money, said bitters should be sold in Hostetter bottles. In either view of the case, there was an illegal appropriation of complainant's right of property, which should be enjoined. Let a decree be entered for an injunction and accounting.