## HOSTETTER CO. v. CONRON.

### (Circuit Court, S. D. New York. November 25, 1901.)

UNFAIR COMPETITION—FRAUDULENT IMITATION—SUFFICIENCY OF EVIDENCE.

A preponderance of the testimony showed that defendant manufactured bitters, and sold the same in bulk as Hostetter's Bitters, which were manufactured only by complainant in accordance with a secret formula, and advised purchasers to put the same in empty Hostetter bottles, which evidence was re-enforced by testimony of a statement made by defendant's employé that he manufactured the bitters sold by defendant in imitation of complainant's, and by the fact that defendant failed to produce such employé as a witness, without any adequate excuse. *Held*, that such evidence was sufficient to sustain complainant's charge of fraud and unfair competition.[1]

In Equity. Suit for unfair competition in trade. On final hearing.

A. H. Clarke, for complainant.
Charles F. Kelley, for defendant.

COXE, District Judge. This is an action to restrain unfair trade. The defendant is charged with having sold a cheap imitation article as genuine Hostetter's Bitters. These bitters are prepared only by the complainant. They are made by a secret formula. The law applicable to this situation is well settled and need not again be stated.

[1] Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.

111 F.—47

Hostetter Co. v. Brueggeman-Reinert Distilling Co. (C. C.) 46 Fed. 188; Same v. Sommers (C. C.) 84 Fed. 333; Same v. Bower (C. C.) 74 Fed. 235; Same v. Comerford (C. C.) 97 Fed. 585. The only question is one of fact. The testimony of the complainant's witnesses is to the effect that the defendant was engaged in manufacturing bitters which he sold by the gallon and half gallon as Hostetter's Bitters. The genuine bitters are sold only in square bottles, holding approximately a pint. It also appears from complainant's testimony that in order to mislead the public the defendant was in the habit of advising his customers to fill empty Hostetter bottles with the spurious bitters thus enabling them to sell the cheap substitute in small quantities as the genuine article. That the defendant sold and gave away empty Hostetter bottles to parties who purchased his bitters by the half gallon is not denied, and several of the complainant's witnesses testify that the defendant suggested that they fill the empty bottles with the counterfeit bitters. These acts and declarations of the defendant are sworn to by eight witnesses who appear to be respectable and are unimpeached. The only accusation against them is that they were in the employ of the complainant. The defendant denies the testimony of the complainant tending to establish fraud and unfair dealing, and he is corroborated to some extent by two witnesses. One of these, at least, is in his employ. The weight of testimony would seem, therefore, to be with the complainant. Its witnesses outnumber those of the defendant and they have less interest in the controversy. If, however, the evidence stopped here, the court, recognizing the rule that in such cases the complainant must establish fraud by a clear preponderance of proof, might entertain some doubt as to what its action should be. But it does not stop here. The most persuasive presumption tending to establish the defendant's unfair proceedings is yet to be stated. On the 3d day of December, 1898, two of the complainant's witnesses called at the defendant's place of business. The defendant was absent, but his compounder, one Pfeiffer, waited upon them, and, in reply to a complaint that the goods previously purchased were not up to the required standard, Pfeiffer said:

"I try to make them as near right as I possibly can. I get a bottle from Acker, Merrall & Condit occasionally as a guide so as to make the Hostetter's Bitters right in color and as near the taste as possible."

Pfeiffer was not called as a witness and this statement stands unchallenged, except by a qualified denial from a young woman who was employed by the defendant. No excuse, which the court can consider, is given for the failure to contradict this inculpating evidence, and, of course, the presumption is that had the witness been called he would have been unable to deny its truth. The only excuse suggested is found in the defendant's brief, and is as follows:

"In case the absence of Mr. Pfeiffer should be commented on by plaintiff, we would say that this man Pfeiffer had been in the employ of the defendant more than five years prior to the commencement of this action, but to the surprise of defendant, a couple of days before the first hearing in this matter he suddenly said to defendant: 'Mr. Conron, I am going to leave to-

night,' and when pressed for his reasons for so doing, and at such short notice, said, 'Well, I am getting old and my son in Boston wants me to go there to live with him and I am going to retire.' He did leave and from that day to this has not returned."

Even if the court could regard this statement as proof it would hardly help the defendant. It seems rather to strengthen the presumption against him. Pfeiffer's sudden exodus two days before the hearing is open to a most damaging inference, and no reason is suggested why his testimony was not taken after he went to live with his son at Boston. The presumption arising from the omission to call so important a witness added to the complainant's testimony presents a case which leaves little room for doubt.

It follows that the complainant is entitled to a decree as prayed for in the bill.