VAN HOBOKEN et al. v. MOHNS & KALTENBACH.

(Circuit Court, N. D. California. December 23, 1901.)

No. 12,860.

TRADE-MARK—INFRINGEMENT—REFILLING GIN BOTTLES—INJUNCTION.
     Where distillers and selectors of gin have for many years put up and exported their gin in dark glass bottles of a distinctive size and shape, having their firm name, address, and their registered monogram trade-mark blown in the glass, one who refills such bottles with an inferior quality of gin, which he sells without notice that such gin is not genuine, infringes on their rights, and should be restrained, though the refilled bottles are sold at a less price than the genuine, and do not have such distillers' monogram paper label and stamp on the cork.[1]

In Equity.   Suit for infringement of trade-mark.

Scrivner & Hopkins, for complainants.
George E. De Golia, for respondent.

MORROW, Circuit Judge.   The complainants are citizens of Rotterdam, Holland, and are distillers and selectors of gin.   For many years they have exported gin to the United States in dark glass bottles of distinctive size and shape, having their firm name, address, and monogram blown into the glass.   Each bottle bears upon one of its sides a label in a circular form, containing the words, "A. Van Hoboken & Co., Rotterdam, Holland," together with the monogram, "A—V—H"; and, in addition, the cork of each bottle is covered by a circular white label, printed in black, with a fanciful scroll and the words "A. Van Hoboken & Co.—Genever," together with the monogram "A—V—H."   It is alleged that these labels, trade-name, and monogram are respectively valid and subsisting trade-marks, and of very considerable value to the complainants.   The respondent is a corporation organized and existing under the laws of the state of California, and having its principal place of business in the city of San Francisco, and dealing in liquors.   The complainants charge the respondent with carrying on an unfair and fraudulent competition against complainants by refilling the complainants' bottles with a spurious gin of inferior quality, after the original contents have been removed in the course of trade, and palming off said spurious gin upon the public as and for the genuine bottled gin of complainants. Irreparable loss and damage are alleged to have been sustained by the complainants by reason of said fraud and unfair trade of the respondent, and this suit is brought for an injunction restraining the respondent from the alleged infringing acts, and for an accounting. The respondent makes a general denial of these charges.

It appears from the evidence that an agent of the complainants went to the respondent's place of business, and asked for some gin, indicating two bottles in the show window as the kind desired. These bottles had the complainants' name blown in the glass on the side of the bottle, and the monogram "A—V—H" on one of the

[1] Unfair competition, see notes to Scheuer v. Miller, 20 C. C. A. 165; Lare v. Harpers & Bro., 30 C. C. A. 376.

upper corners thereof. It does not appear whether or not the paper labels were on the bottle or cork. The respondent's clerk took from a shelf a similar bottle, which the complainants' agent bought, paying therefor $1.35. On the same day the agent went again to the respondent's store, and purchased another bottle in the same manner, and for the same price. He received a receipt from the clerk in the form of a paid bill for each purchase, in which the purchase was described as "1 btl. gin, $1.35." These two bottles were introduced in evidence as exhibits, as well as a bottle exported by the complainants containing the gin manufactured by them. The bottles are identical in shape, size, color, and as to the name and monogram blown in the glass. The bottles bought by the complainants' agent, however, do not bear upon their sides or upon the cork any paper labels. The bottle of gin exported by the complainants was gauged by a customs gauger of San Francisco as being 98 proof, and the two bottles bought by the complainants' agent were gauged by the same gauger as 91 proof. It is admitted by the respondent that the two bottles sold to the complainants' agent did not contain the gin exported by the complainants. That gin is advertised and sold by it as "A—V—H.," $1.60 per bottle, while the gin sold to complainants' agent is advertised and sold as "M. & K. bottling, square black bottles, $1.35 per bottle." Respondent therefore contends that, although the bottles sold to complainants' agent were the same as those containing the complainants' gin, they did not bear the complainants' labels, and were not sold as and for the genuine bottled gin of complainants; that such sales were therefore not an infringement of the complainants' rights; that there has been no unfair competition, because (1) there was no intent to deceive, (2) no notice or warning was given to respondent that complainants' rights were being affected, (3) no colorable imitation or attempt to imitate was made, and (4) under the facts no one could have been misled. While it does not appear that the refilled bottles bore the printed labels of the complainant on the side and cork, the firm name and monogram were plainly to be seen in the glass itself. This monogram appears to be a registered trade-mark. It is so alleged in the complaint, and the certificate of registration appears as an exhibit with the deposition of Jacobus Van Hoboken. The firm name, "A. Van Hoboken & Co.," is also alleged to have become a trade-name by user, and to be of special value to the complainants. If the paper labels had also been upon the refilled bottles, there would be no question but that infringement had been clearly established. Why should the absence of one of the trade-marks lessen the liability of an infringer, when the remaining trade-mark is a distinctive and characteristic feature of the marks usually placed on. the goods? There is no particular coloring or descriptive design in the complainants' trade-marks to catch the attention of the purchaser and remain in the memory, but rather the combination of the letters "A—V—H." This monogram is the important feature of the trade-mark, and probably the controlling one in establishing the reputation of the complainants' manufacture in the mind of the public. The ordinary purchaser at retail would remember this mark, and the shape and color of the bottle,

quite independently of the circular label and usual price. And unless it was especially called to his attention that such a bottle did not contain complainants' manufacture, the reasonable probability is that he would be deceived in making his purchase. A fundamental principle in the law of trade-marks is the protection of the owner of the trade-mark against fraud in its use by others. This fraud may consist in such use of a trade name or mark as to induce purchasers to believe that they are obtaining the article which has won reputation under the particular name or mark. It has been held that, even where a geographical name has been adopted and claimed as a trade-mark and become a well-known sign and synonym for superior excellence, its use will not be permitted by persons residing at other places for the purpose by fraud and false representation of appropriating the good will and business which long-continued industry and skill and a generous use of capital has rightfully built up. Flour Mills Co. v. Eagle, 30 C. C. A. 386, 86 Fed. 608, 41 L. R. A. 162. And, following this doctrine, in La Republique Francaise v. Saratoga Vichy Springs Co., 46 C. C. A. 418, 107 Fed. 459, the court of appeals in the Second circuit held that a label upon bottles of manufactured Vichy water, even though displaying the fact that it came from another place than the original Vichy water, came within the spirit of this prohibition, because it untruthfully tended to mislead the unwary purchaser, and to gain the reputation which the Vichy natural springs had acquired. Respondent contends that here there was no intent to deceive in the refilling of the complainants' bottles with a different manufacture of gin. In N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 42 C. C. A. 376, 102 Fed. 327, Judge Hawley, speaking for the court of appeals for the Ninth circuit, said:

"It is not essential to the right of a complainant to an injunction to show absolute fraud or willful intention on the part of the respondent. * * * If the acts of the respondent in adopting the name of 'Gold Drop' constituted an infringement of the trade-mark or trade-name of the complainant, and it was put on the market in such a manner as to interfere with the legal rights of the complainant, to its loss and injury, it would be entitled to an injunction, irrespective of the question of any testimony as to actual fraud or willful intent."

And further on, with regard to the deception of the purchaser by appearances, the court says:

"There are many cases where respondent's packages and labels are to the eye so distinctive and unlike the packages of complainant as not to deceive purchasers exercising ordinary care, who are accustomed to the size of the packages and the general characteristics of the labels. But how about the stranger, who knows nothing about the packages or of the labels, but has read the advertisement, and remembers the same?"

In the case at bar, would not persons of ordinary intelligence, buying with usual care, seeing the firm name blown into the side of the bottle, and the distinctive trade-mark "A—V—H" also plainly visible on the bottle, be led into the mistaken belief that they were purchasing the genuine article manufactured by the complainants? The answer must be in the affirmative, unless the attention of the purchaser was specially called to the fact that the bottle contained

a different preparation. If we consider the case as one of unfair competition, the same result must follow. As was said in the various Hostetter Cases (C. C.) 84 Fed. 333, 107 Fed. 705, and 110 Fed. 524, the doctrine of unfair competition rests upon the proposition that men must be honest in their business transactions, and rely upon the merits of their own goods, and not undertake to palm off inferior goods as and for goods of the genuine manufacturer. Even if the respondent in the case at bar was using the bottles of complainants as a mere convenience, without dishonest motives, the custom of refilling receptacles bearing distinctive trade names or marks with other manufactures is too dangerous, and allows too great an opportunity for fraud against the owners of valuable preparations, to be permitted.

Let a decree be entered in favor of the complainants.