### PREST-O-LITE CO. v. AVERY LIGHTING CO.

(Circuit Court, N. D. New York. May 18, 1908.)

TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT—UNFAIR COMPETITION.

Complainant manufactures and sells for use on automobiles patented tanks containing acetylene gas. It packs such tanks with asbestos, and charges them with gas by a method of its own, and keeps a record of each tank, which is numbered. When the gas is exhausted, it exchanges a filled tank for the empty one which it repairs, repacks, if necessary, and refills. Each tank bears a metal plate on which is engraved complainant's trade-mark for its gas, "Prest-O-Lite," the number, and a patent notice. Defendant, which is a competitor in business making and selling tanks and gas under a different name, buys or exchanges for empty tanks of complainant and refills and resells the same without removing the plate, but in some cases covering a part of the same by a paper label easily removed, stating that the tank had been refilled by it. *Held*, that the same was an infringement of complainant's trade-mark, and also unfair competition, which entitled complainant to an injunction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 78–88.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Motion for preliminary injunction, restraining infringement of trade-mark and unfair competition in trade.

Winter & Winter, for complainant.
Walter H. Chamberlin, for defendant.

RAY, District Judge. On the 25th day of December, 1906, the Concentrated Acetylene Company registered its trade-mark, "Prest-O-Lite," stating it had been continuously used in the business of the corporation since October, 1904, and:

"The class of merchandise to which the trade-mark is appropriated is class 6, chemicals not otherwise classified, and the particular description of goods comprised in said class upon which said trade-mark is used is illuminating gas in portable tanks for supplying automobile headlights, boat

lights, etc. The trade-mark is displayed on the tanks containing the gas by attaching thereto a metallic plate on which the same is shown."

By order of the court, the said company, on due application, changed its name to "Prest-O-Lite Company." Since its organization the complainant company has been extensively engaged in the manufacture and sale of acetylene gas for use on automobiles, which it sells to and distributes to its customers in cylindrical tanks so constructed, the complainant claims, that the maximum amount of gas is delivered in the smallest bulk consistent with safety. Complainant's tanks of special construction and patented are tightly packed with asbestos, which is porous and fireproof, and a certain definite volume of liquid acetone which has the property of absorbing acetylene gas under pressure to an amount many times its volume. The effect is that each tank is filled with this porous asbestos into which has soaked equally throughout the tank a certain definite amount of acetone, and, when the tank is charged with acetylene gas, it is absorbed by the acetone equally all over the tank in amounts proportionate to the heat under which the tank is charged. The result is that, properly packed and charged, there are no spaces within the tank where the gas can collect under pressure and cause combustion. To the side of these tanks, filled with Prest-O-Lite gas, is affixed a removable metallic plate bearing the trade-mark of complainant, "Prest-O-Lite," with other words, and these in this condition are sold by complainant to the dealers and users, but never without the gas. The metal cylinder itself is not destructible, and can be used for years; but the safety valves and other parts get broken, the asbestos settles, the acetone between depleted, the gas is exhausted after a little time, and empty spaces are left in which the gas under great pressure congregates, or settles, and becomes liable to explode. Hence the asbestos and acetone become a material part of the tank itself, and some skill and judgment is required in refilling and recharging. Each tank is numbered, and complainant company keeps a correct record of the amount of acetone contained in each tank, and, when a tank requires refilling with gas after use, it is possible, and not very difficult, by referring to these records, to properly recharge and refill the tank and restore its maximum efficiency. In the absence of these records, the tanks cannot be so restored to usefulness except by a crude and imperfect method and not, as a rule, to its full efficiency. As a rule it is necessary to recharge or refill a tank after about 40 hours use. In order to facilitate the sale of its acetylene gas, the complainant makes it an invariable practice and a part of its business to take back any of these tanks of its own manufacture when it has become exhausted of gas, or otherwise depleted in its parts, and give in exchange therefor, for a small additional compensation, a Prest-O-Lite tank filed with Prest-O-Lite gas and acetone to the maximum quantity; the tank being newly copper plated with all broken or missing parts restored. Complainant company has also established at large expense pumping plants throughout the country, and numerous agencies, so that a user, without difficulty, can obtain a newly filled and perfect tank in place of his exhausted one.

The engraved plate used by complainant on all its tanks, until about a year ago, read as follows:

Prest-O-Lite
Gas Tank.
Manufactured solely by
The Prest-O-Lite Company,                    Indianapolis, Indiana.
No. ———.
Exclusive licenses under patents No. 619,552–661,401–664,383–727,609.
Other patents pending.

Each plate has a different number. For about a year past a plate has been attached to these tanks reading as follows:

Prest-O-Lite Gas Tank. No.———.

The Prest-O-Lite Co.

New York—Boston—Indianapolis—San Francisco—Toronto.

Patented Dec. 25th 1900—May 12th 1903.

Notice this device is sold and purchased for sale and use only when charged with gas by the undersigned. No license is granted to use or sell this device when charged by anyone else and no license is granted to anyone else to recharge this device. Any sale or use of this device when sold or used in violation of this condition and limited license will be considered as an infringement of letters patent of the United States under which this device is made and sold and all parties so selling and using this device contrary to the terms of this limited license will be treated as infringers of said letters patent and render themselves liable to suit for injunction and damages without further notice. This license is good so long as this plate remains upon the device. Any erasures or removals of this plate will be considered a violation of the license.

A purchase is an acceptance of these conditions. Agents and dealers are not authorized to vary this license.

The Commercial Acetylene Company.            The Prest-O-Lite Company.

It is assumed that any person may make and sell acetylene gas, but each person so making and selling has the right to put it in some particular receptacle, specially stored and all ready for use in a particular place or places, as is done by the complainant here, and when this is done, as here, it becomes something more than mere acetylene gas. "Prest-O-Lite" gas means therefore acetylene gas prepared and tanked as the complainant company prepares and tanks it in these specific tanks. No one has the right to palm off on the public, purchasers, and users, acetylene gas as "Prest-O-Lite" acetylene gas either in these tanks or others. If such gas is sold by others in these tanks, when not prepared or put therein in the careful and particular manner described, the mode, etc., used by complainant company, the impression is given that the gas contained therein is not only acetylene gas, but acetylene gas prepared and put or stored in the tank in the combination, etc., described. If the gas is not so stored therein, and it proves inferior or less efficient in any respect to that sold by the complainant company, when so prepared and placed in the tank, a wrong and injury are done to the complainant. Its gas is brought into disrepute.

The fact remains, however, that when complainant company sells the tank filled with gas, without restriction as to use, such tank becomes the property of the purchaser, and he may use the tank as he sees fit and have it refilled with gas by any one or with something else. This,

however, is a different proposition from the one presented in this case. The defendant company either buys up these old tanks with the plate first described, or trades for them, thus becoming the owner. This it has the right to do. It then fills them in its way with its own acetylene gas, and, in some cases, pasting over a part of the copper plate on the tank a paper label, easily removed, either sells them outright, or gives them to users in exchange for others. This label is sometimes above or below the plate, and sometimes is bottom side up when the tank stands on end. This label reads as follows:

"This tank has been refilled with acetylene gas by the Avery Portable Lighting Company, Milwaukee, Wis., Albany, N. Y., Manufacturers of Autogas Tanks."

The defendant is a competing company in this business and has a tank of its own which it can and does fill with its own gas, described and advertised as "Autogas." Avery, of the defendant company, was formerly with the complainant company, and is familiar with its business methods.

It is evident to me that the defendant pursues this method and gets hold of these "Prest-O-Lite" gas tanks and passes them out to its customers for the purpose of taking trade from the complainant company. It in no way changes the appearance of the tank, except by pasting on the label, easily removed, and which only covers a part of the plate, and when it says, "This tank has been refilled with acetylene gas by the Avery Portable Lighting Company," etc., it implies and fairly represents to the purchaser not only that he is getting acetylene gas made by the Prest-O-Lite Company, but that he is obtaining a properly refilled "Prest-O-Lite gas tank." When the lower part of the plate is not covered by the label, surely the user or purchaser recognizes it as a "Prest-O-Lite gas tank," and will naturally assume that it holds "Prest-O-Lite gas," and this is especially true as the defendant company has a different tank if its own make bearing a different plate and the purchasers will naturally assume that, when they take a "Prest-O-Lite tank," they get Prest-O-Lite acetylene gas properly placed therein, and that when they take an "Autogas tank," they obtain Autogas properly placed therein. The natural result is that would-be purchasers of the Prest-O-Lite gas get Autogas imperfectly placed in the Prest-O-Lite tank. If the purchaser has doubts that he is getting a Prest-O-Lite tank properly filled with Prest-O-Lite gas, he easily scrapes off the label, and, finding the complainant's trade-mark "Prest-O-Lite," he feels assured he has obtained what he desired. I think, and am constrained to hold, that this is an improper use of these tanks bearing complainant's trade-marks, and that these acts constitute unfair competition in trade, and should be restrained. It would be easy and not expensive to remove the engraved plate from the tanks and prevent confusion and imposition. If defendant company would use these tanks, it should do this. I am not passing on the question of infringement of the patents where there has been a violation of the license notice now placed on the copper plates attached to the tanks. I am bound to presume that the patents are valid, but that question is not before me. Complainant's trade-mark is valid, and it is always used on his plate

referred to. To cover the trade-mark with a paper label leaving most of the plate well known to bear complainant's trade-mark, uncovered, informs every one familiar with complainant's goods that it is a Prest-O-Lite tank presumably filled with Prest-O-Lite gas. Purchasers and users are not informed to the contrary. It would be easy to say on the label: "This refilled tank contains acetylene gas made by Avery Lighting Company, and not Prest-O-Lite gas."

I think this case is covered in principle by the following: Pontefact v. Isenberger (C. C.) 106 Fed. 499 (defendant restrained from refilling plaintiff's barrels carrying the trade-mark "Golden Wedding," applied to whisky); Van Hoboken v. Mohns & Kaltenbach (C. C.) 112 Fed. 528 (defendants restrained from refilling with gin, and selling, bottles stamped with plaintiff's monogram trade-mark, firm name, and address); Evans v. Von Laer (C. C.) 32 Fed. 153 (defendant enjoined from selling lime juice in bottles stamped with complainant's name, both parties being dealers in lime juice); Hostetter Co. v. Martinoni (C. C.) 110 Fed. 524 (defendant enjoined from selling bitters in a demijohn marked H. Bitters and in Hostetter Bitters bottles, complainant having exclusive right to name "Hostetter"). See, also, Hostetter Co. v. Sommers (C. C.) 84 Fed. 333, per Townsend, D. J.

I have not gone extensively into the numerous affidavits or the numerous decided cases.

The complainant is entitled to a preliminary injunction restraining the defendant from selling or passing off to its customers or the trade any of these "Prest-O-Lite gas tanks" filled with acetylene gas, unless it shall remove therefrom the metal engraved plate thereon, or completely erase the words and figures thereon, and place on same a plainly printed label stating that it does not contain gas and acetone made by the Prest-O-Lite Company.

So ordered.