HENNESSY et al. v. WINE GROWERS' ASS'N.

(District Court, S. D. New York.   March 19, 1914.)

No. 9—325.

1. EVIDENCE (§ 590*)—UNFAIR COMPETITION—SUFFICIENCY OF EVIDENCE—DETECTIVES.

Assuming that courts should be careful in enjoining alleged unfair competition on the testimony of detectives whose motive to obtain evidence may lead them to make false or highly colored reports in favor of their employer, where the circumstances surrounding sales of liquor in bulk to be used in refilling bottles bearing plaintiffs' labels made it impossible to obtain the testimony of disinterested persons, that of interested witnesses such as detectives would be weighed by the court, especially where they were offered no reward except the per diem paid them, and where two of the witnesses were students in professional schools doing such work temporarily while pursuing their studies.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2439; Dec. Dig. § 590.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 97*)—UNFAIR COMPETITION—INJUNCTIVE RELIEF.

Where several of defendant's stores sold liquor in bulk to detectives employed by plaintiff and delivered to the purchasers empty bottles bearing plaintiff's labels, with the understanding that the liquor was to be used in refilling such bottles, plaintiff was entitled to an injunction against such unfair competition; it being enough that several sales have been made indicating that defendant was willing to make further sales, and the sales without knowledge that the purchasers were detectives disclosed the intent and purpose as if made to other purchasers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 98*) — UNFAIR COMPETITION — ACCOUNTING.

Where plaintiff's damages from sales by defendant of liquor in bulk, to be used in refilling bottles bearing plaintiff's labels, was insignificant, an accounting will be denied.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. § 98.*]

In Equity.   Bill by Jacques Francis Henry Hennessy and others against the Wine Growers' Association for injunction and accounting on the ground of unfair competition.   On final hearing.   Decree for complainant.

Adolph L. Pincoffs, of New York City, for James Hennessy and others.

Kiernan & Moore, of New York City, for Alexander Oliver Riddel and others.

Theodore Larson, of New York City (George Gordon Battle and Adolph L. Pincoffs, both of New York City, of counsel), for the Hostetter Co.

Bandler & Haas, of New York City (Henry A. Wise and David Bandler, both of New York City, of counsel), for Wine Growers' Ass'n.

HUNT, Circuit Judge.   The bill charges sales by defendant of an article resembling in color, appearance, and flavor Hennessy Three

Star brandy, the giving therewith of empty genuine Hennessy bottles, and the advising, counseling, suggesting, and assisting purchasers to place defendant's liquor in plaintiffs' bottles and to sell the same as genuine Hennessy brandy, all with intent to defraud.

This case was tried with seven others against the same defendant brought by the proprietors of Martell brandy, Canadian Club whisky, Hostetter's bitters, Gordon gin, Gilka Kummel, King William whisky, and Usher's Scotch whisky.

In 1912 the defendant had from 32 to 36 stores in Greater New York, and in the summer of that year detectives in the employ of the plaintiffs in the several actions visited 11 of these stores representing that they desired to purchase bulk liquors that could be substituted for certain brands named, including Hennessy Three Star brandy. Defendant's employés, at the request of plaintiffs' agents, sold the bulk goods and furnished therewith empty bottles with plaintiffs' labels thereon. The record is voluminous, but from the entire testimony I find that at one of defendant's stores Weiler, the manager, believing that he was dealing with yacht clubs, fishing clubs, and stewards, sold goods in bulk and furnished therewith empty bottles from time to time. O'Hare, one of plaintiffs' detectives, says that Ramme, manager of another of defendant's stores, referred him to Weiler as making a practice of selling bulk goods for refilling. The testimony is that Weiler volunteered to furnish empty bottles, promised to send bottles with clean labels, and advised that a genuine bottle of each brand be kept on the shelf back of the bar that it might be opened in the presence of a customer in case of complaint. Weiler said, however, that he supplied the trade in the neighborhood, mentioning several names, and that he had never had a complaint on the goods he furnished. On three separate occasions Weiler received and filled orders from plaintiffs' detectives and delivered as many lots of empty bottles, each lot including a Hennessy bottle. At three other stores, 663 Sixth avenue, 92 Lenox avenue, and 21 Columbus avenue, goods were sold and empty bottles delivered under circumstances similar to those at Weiler's place; and at still another store, 2085 Amsterdam avenue, bulk goods were negotiated for and bottles promised.

While it is admitted that some of the liquors and bottles in evidence were furnished by defendant's agents, it is denied that anything was said about refilling at the time the sales were made. But the great weight of the evidence is that defendant's employés who sold the goods well understood that the bulk goods with which they furnished empty bottles were to be used for refilling. The witness Schmidt, called by defendant, said in part:

By the Court: Q. You said that something was said about refilling. Now, did you believe that he wanted wines or liquors to refill bottles? A. Well, yes; I did.

Q. Well, why did you sell them to him? Did you know that you might get into trouble over that sort of thing? A. Why, no; I had never had that experience before, and they told me they were giving these goods away and they were trying to save expenses, and I did not think anything of it.

Q. In your former experience, Mr. Schmidt, what had you been doing with your Gordon gin bottles, for instance, and Hennessy brandy bottles? A. Any bottles that had names in them we used to throw away. Other bottles,

branded bottles, Black & White bottles, Port bottles or flasks, we kept them until we got three or four crates, and then we returned them to headquarters, and they used them down there.

Q. Did you not know that you ought not to take, for instance, an Irish whisky bottle of the brand of Jameson's and to sell a whisky that looked like it for the purpose of putting it into the Irish whisky bottle? A. Well, I never thought of it.

Q. I only want you to tell me exactly your own view; I just want you to tell me what you know and what you believe, and nothing else; that is all Mr. Wise wants you to tell, and that is all Mr. Battle wants you to tell. A. I didn't even think of it anyway; they said they wanted—the way they put it to me, to save expenses. They said they were giving the stuff away, and I thought I could give them just as good goods.

Q. You believed that, did you? You believed what they said to you? A. Yes, sir.

Q. Mr. Wise has asked you to tell anything that you can recall. Wasn't that the substance of your last question?

Mr. Wise: Yes, sir. I want you to tell the court your recollection of whatever was said in this entire visit there, of Moore and this man Naughton; while those two men were in there talking with you about this first purchase, as they went over this list of goods, and as they went over this stuff, and you told them that you had such goods that were as good as several different brands; what was said during the conversation about refilling, if anything? Tell us all that you can remember. A. They asked if these goods were just as good as the standard brands, whether I thought they would pass that way, and I thought so. I thought they were just as good a quality. I didn't see why not. I don't remember just the exact words; it was so far back; and I cannot remember any more about it.

[1] Defendant says that testimony of detectives employed to gather evidence is always to be regarded with suspicion, and is not to be relied upon in this case. Let it be accepted as generally true that courts should be very careful about lending their aid to enjoin a defendant upon a showing made by witnesses whose motive to obtain evidence may lead them to make false or reckless or highly colored reports in favor of those employing them. But, on the other hand, it is the truth that is to be ascertained; and, if to get at the facts which are essential to sustain an issue upon which valuable property rights depend, circumstances make it impossible to obtain evidence of disinterested persons, it none the less becomes the solemn duty of the court to work to a correct finding, and in doing so to weigh all evidence, no matter whether given by interested or disinterested witnesses. In other words, the courts must prevent threatened future invasion of rights, whether proof of past invasion comes from men in one calling or another.

The present case is to be distinguished, too, from cases where the testimony comes solely from persons who are professional detectives working for large rewards only to be gathered in the event of success. Here there was no reward except the per diem paid to each, and further than that at least two important witnesses were, when employed, students in professional schools and working in order to gain temporary support while pursuing their studies. One such is now a lawyer, another a physician.

[2] There being no proof of sales to persons other than detectives in the employ of plaintiffs, defendant urges that no injunction should issue inasmuch as no such course of conduct has been proved as will show by a clear preponderance of the evidence that there was inten-

tional fraud. It is further contended that plaintiff has no cause of complaint against a defendant for damages resulting from an act done by defendant at the instance and solicitation of plaintiff's agents. As defendant's employés did not know at the time that the purchasers were detectives, the evidence discloses their intent and purpose exactly the same as if the sales were made to purchasers not buying in order to obtain evidence against the seller.

In Julius Kessler & Co. v. Goldstrom, 177 Fed. 392, 101 C. C. A. 476, the Court of Appeals for the Eighth Circuit, in reversing a decree of the lower court, commented upon the argument to the effect that a sale to emissaries of the complainant did not warrant a decree for an infringement of a trade-mark and for an accounting, and held that, notwithstanding the sale to the agent of complainant, the intent of the defendant was disclosed exactly as if the sale had been to a real purchaser; it appearing that the defendant did not know at the time that the purchasers were acting for complainant. The court was of the opinion that the motives and actions were to be judged from the viewpoint of the understanding of the facts by the defendant who sold the goods.

It is not necessary to prove a course of business in order to warrant an injunction. I do not think that it is incumbent upon the plaintiff to establish a habit by showing very many sales; it is enough that plaintiff has established several sales from which must be deduced the fact that defendant was willing to make further sales, and that in several of the stores owned by defendant its agents were ready to make sales is clearly established. Gorham Mfg. Co. v. Schmidt (D. C.) 196 Fed. 955; Julius Kessler & Co. v. Goldstrom, 177 Fed. 392, 101 C. C. A. 476; A. B. Dick Co. v. Henry (C. C.) 149 Fed. 424; Badische Anilin, etc., v. Klipstein (C. C.) 125 Fed. 543, 556; Samuel & Co. v. Hostetter, 118 Fed. 257, 55 C. C. A. 111; Chicago P. T. Co. v. Phila. P. T. Co. (C. C.) 118 Fed. 852; Hostetter Co. v. Conron (C. C.) 111 Fed. 737; Hostetter Co. v. Schneider (C. C.) 107 Fed. 705; Hostetter Co. v. Sommers (C. C.) 84 Fed. 333; Hostetter Co. v. Becker (C. C.) 73 Fed. 297; Hostetter Co. v. Brueggeman (C. C.) 46 Fed. 188.

[3] Injunction should therefore issue to stop defendant from continuing the practice it has indulged in. I do not find, however, that any accounting should be granted, for upon the testimony in the record the damage has been too insignificant to warrant a decree for an accounting.

Decree for plaintiff, together with costs.