PREST–O–LITE CO. v. BOURNONVILLE et ux.

(District Court, D. New Jersey. September 21, 1914.)

1. TRADE-MARKS AND TRADE-NAMES ⬤⟿72— REFILLING AND SELLING GAS
   TANKS, WITHOUT OBLITERATING TRADE-MARK, UNFAIR COMPETITION.
   Defendants *held* chargeable with unfair competition in refilling acetylene
   gas tanks originally made, filled, and sold by complainant without ob-
   literating its trade-mark "Prest-O-Lite," or its offer placed thereon to
   replace worn-out tanks.

2. COURTS ⬤⟿328(3)—IN SUIT FOR INJUNCTION, AMOUNT IN CONTROVERSY IS
   PROPERTY RIGHT TO BE PROTECTED.
   In a suit for an injunction, the value of the matter in dispute is not
   tested by the more immediate pecuniary damage resulting from the acts
   complained of, but by the value to complainant of the business or property
   right for which protection is sought.

In Equity. Suit by the Prest-O-Lite Company against Camille
Bournonville and Ida Bournonville, his wife. On final hearing.
Decree for complainant.

See, also, 260 Fed. 442, 446.

Winter & Winter, of New York City, for complainant.
W. P. Preble, of New York City, for defendants.

HAIGHT, District Judge. [1] A preliminary injunction was grant-
ed in this case by the late Judge Cross. The evidence before him was,
in no material respect, different from that presented on final hearing.
The practices which the bill seeks to prevent have been the subject
of litigation in several districts, and have been passed upon by two
Circuit Courts of Appeals. In each case an injunction has been issued,
at least as broad as that granted by Judge Cross. Prest-O-Lite Co. v.
Avery Lighting Co., 161 Fed. 648 (C. C. N. D. N. Y.); Prest-O-Lite
Co. v. Post & Lester Co., 163 Fed. 63 (C. C. D. Conn.); Prest-O-Lite
Co. v. Bogen, 209 Fed. 915 (C. C. S. D. Cal.); Prest-O-Lite Co. v. Da-
vis, 209 Fed. 917 (D. C. S. D. Ohio, W. D.), affirmed by the Circuit
Court of Appeals, 6th Cir., July 25, 1914, 215 Fed. 349, 131 C. C. A.
491; Searchlight Gas Co. v. Prest-O-Lite Co., 215 Fed. 692, 131 C. C.
A. 626 (C. C. A. 7th Cir.). I am also informed by counsel (although I
have not seen copies of the opinions) that the same disposition was
made of similar cases in the district of South Carolina (Prest-O-Lite
Co. v. Jenkins, not reported) and in the Eastern District of Pennsyl-
vania (Prest-O-Lite Co. v. Auto Equipment Co., not reported).

There are no facts in the present case which distinguish it from the
cases above cited. The decision in this case might therefore properly
be rested on those authorities, as I consider them entirely sound. All
of the points urged on behalf of the defendants, save one which I will
hereafter discuss, have been considered and decided adversely to de-
fendants' contention by one or more of those cases. The defendants
are competitors of the complainant in the manufacture and sale of
acetylene gas. The complainant has established a system for market-
ing its gas, which is fully described in the various opinions to which

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

I have referred. I will therefore not attempt to explain it in detail. The evidence convinces me that the defendants were, at the time the preliminary injunction was granted, engaged in refilling and delivering tanks, which had been originally distributed by the complainant under its system, and bearing the trade-name "Prest-O-Lite" (which the complainant had adopted and which had become generally recognized), to various automobile supply dealers in the city of Newark, on an extensive scale. These tanks were then distributed by the dealers among automobile owners as tanks containing gas manufactured by the complainant, there being no way by which a purchaser could ascertain the deception. The defendants, I am convinced, had knowledge of this, and for that matter were actual participants therein.

While the gas furnished by the complainant has become recognized very generally as of excellent quality, probably the most important inducement to an automobilist to purchase the complainant's tank and gas is the fact that, under the complainant's system, a holder of one of these tanks (when its supply of gas has become exhausted, or it has been damaged or worn out) may exchange it almost anywhere in the United States or Canada, at a depot established by the complainant, for the same kind of a tank fully charged with gas at a relatively small cost. This exchange could not be made, under the complainant's system, with a tank which had been refilled by any one other than the complainant. The defendants have no such system, nor do they furnish tanks; their business being confined to refilling. It is clear that the defendants could not, without deception, sell their gas to the ordinary automobilist. But by refilling the tanks originally distributed by the complainant and bearing the trade-name "Prest-O-Lite," and placing them, either directly or indirectly, upon the market, they were thereby enabled, fraudulently, to secure business which they otherwise could not have gotten, and to reap the benefit of the system and business which the complainant, by industry and an expenditure of a large amount of money, had built up, and to which it was entitled. This constitutes almost as flagrant an example of unfair competition as it is possible to imagine.

There is another aspect of the case in which the complainant may be seriously injured unless the defendants are compelled to obliterate the words "Prest-O-Lite" from all tanks refilled by them and bearing those words, namely:

"It is part of the complainant's system to replace a tank which has become worn out or damaged with another fully charged, at the same price as it charges a holder of an exhausted tank for one filled."

The inducement for the complainant to do this is the profit which would inure to it from refilling exhausted tanks. If these exhausted tanks are refilled from time to time by the defendants, the complainant would lose this profit, and, when any such tank had become damaged or worn out, the complainant would be required to furnish a new one in its place, because it would have no way of ascertaining whether it had been refilled at any time by others. In this way it is conceivable that considerable damage might result to the complainant. This feature was considered by the Circuit Court of Appeals in Search-

light Gas Co. v. Prest-O-Lite Co. as a sufficient ground upon which to require the obliteration of the word "Prest-O-Lite" from any tanks filled by the defendants in that case. I do not deem it necessary to base my decision in this case upon that ground, because it seems entirely clear to me that complainant is entitled to the relief granted by Judge Cross, upon the theory of unfair competition.

[2] The defendants, in their answer, challenge the jurisdiction of the court on the ground that the value of the matter in controversy is below the jurisdictional amount. The answer alleges:

"The amount to which the complainant has been damaged and injured by the defendants' acts, if at all, cannot exceed $500."

In the brief filed, counsel has contented himself with the mere statement that—

"It is inconceivable that the amount in controversy is large enough to give jurisdiction by adverse citizenship."

He has made no argument to support this. It is not clear upon what theory he bases his contention. It is entirely well settled that in a suit for an injunction the value of the matter in dispute is not tested by the mere immediate pecuniary damage resulting from the acts complained of, but by the value to the complainant of the business or property right for which protection is sought. Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 Sup. Ct. 529, 51 L. Ed. 821; Bitterman v. Louisville & Nashville R. R., 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693. Judged by this standard, the matter in controversy in the present suit far exceeds the jurisdictional amount.

There will be a decree for the complainant, with costs, the injunction to be in the same form as that granted by Judge Cross.