WILLIAM R. WARNER & COMPANY *v.* ELI LILLY
& COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
THIRD CIRCUIT.

No. 32.   Argued April 28, 29, 1924.—Decided June 9, 1924.

1. Names which are merely descriptive of the ingredients, qualities, or characteristics of an article of trade,—such as the names " Coco-Quinine " and " Quin-Coco," applied to a liquid preparation of quinine in combination with chocolate and other things,—cannot be appropriated as trademarks.   P. 528.
2. The use of a name similar to that already employed by another, truthfully to describe one's own product, is not a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of that product.  *Id.*
3. A first made and marketed a liquid preparation containing quinine and other drugs compounded with chocolate to give it color and flavor and to aid in suspending the quinine.  B then, using chocolate, produced an article of the same taste and appearance, but sold cheaper; and to reap A's trade suggested to retail druggists the feasibility and economy of passing off the one for the other, when dispensed out of the bottle; which was done in many and divers instances.

*Held*: (a) That B was guilty of unfair competition.  P. 528.
(b) He who induces another to commit a fraud and furnishes the means, is equally guilty.  P. 530.
(c) When several acts of unfair competition are shown, there is warrant for concluding that they will continue, and equity will afford adequate relief by injunction.  P. 531.

(d) The injunction in this case should forbid B and his agents from directly or indirectly representing or suggesting to his customers the feasibility or possibility of passing off B's product for A's, and may well require that his original packages sold to druggists shall bear labels not only distinguishing B's bottled product from A's, but also stating affirmatively that B's preparation is not to be sold or dispensed as A's, or be used in filling prescriptions or orders calling for the latter. P. 531.

(e) But the use by B of chocolate as an ingredient of his preparation should not be forbidden. *Id.*

275 Fed. 752, reversed.

Certiorari to a decree of the Circuit Court of Appeals which reversed a decree of the District Court dismissing on the merits a suit brought by the above named respondent to enjoin the petitioner from continuing to manufacture a medicinal preparation called Quin-Coco, if flavored with chocolate, and from continuing the use of that name.

*Mr. George W. Wickersham* and *Mr. Francis Rawle,* with whom *Mr. Roger S. Baldwin* and *Mr. Joseph W. Henderson* were on the briefs, for petitioner.

*Mr. E. W. Bradford* for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Respondent is a corporation engaged in the manufacture and sale of pharmaceutical and chemical products. In 1899 it began and has ever since continued to make and sell a liquid preparation of quinine, in combination with other substances, including yerba-santa and chocolate, under the name of Coco-Quinine.

Petitioner also is a pharmaceutical and chemical manufacturer. The Pfeiffer Chemical Company, Searle & Hereth Company and petitioner are under the same ownership and control. The first named company in 1906 began the manufacture of a liquid preparation which is substantially the same as respondent's preparation and

which was put upon the market under the name of Quin-Coco. Two years later the Searle & Hereth Company engaged in the manufacture of the preparation, which ever since has been sold and distributed by petitioner.

This suit was brought in the Federal District Court for the Eastern District of Pennsylvania by respondent to enjoin petitioner from continuing to manufacture and sell the preparation if flavored or colored with chocolate; and also from using the name Quin-Coco, on the ground that it was an infringement of the name Coco-Quinine, to the use of which respondent had acquired an exclusive right. The District Court decided against respondent upon both grounds. 268 Fed. 156. On appeal the Court of Appeals ruled with the District Court upon the issue of infringement but reversed the decree upon that of unfair competition. 275 Fed. 752.

The entire record is here and both questions are open for consideration.

First. We agree with the courts below that the charge of infringement was not sustained. The name Coco-Quinine is descriptive of the ingredients which enter into the preparation. The same is equally true of the name Quin-Coco. A name which is merely descriptive of the ingredients, qualities or characteristics of an article of trade cannot be appropriated as a trademark and the exclusive use of it afforded legal protection. The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product. *Canal Co.* v. *Clark,* 13 Wall. 311, 323, 327; *Standard Paint Co.* v. *Trinidad Asphalt Co.,* 220 U. S. 446, 453; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118, 140.

Second. The issue of unfair competition, on which the courts below differed, presents a question of more difficulty. The testimony is voluminous, more than two

hundred witnesses having been examined; but, since the question with which we are now dealing is primarily one of fact, we have found it necessary to examine and consider it. Nothing is to be gained by reviewing the evidence at length, and we shall do no more than summarize the facts upon which we have reached our conclusions.

The use of chocolate as an ingredient has a three-fold effect: It imparts to the preparation a distinctive color and a distinctive flavor, and, to some extent, operates as a medium to suspend the quinine and prevent its precipitation. It has no therapeutic value; but it supplies the mixture with a quality of palatability for which there is no equally satisfactory substitute. Respondent, by laboratory experiments, first developed the idea of the addition of chocolate to the preparation for the purpose of giving it a characteristic color and an agreeable flavor. There was at the time no liquid preparation of quinine on the market containing chocolate, though there is evidence that it was sometimes so made up by druggists when called for. There is some evidence that petitioner endeavored by experiments to produce a preparation of the exact color and taste of that produced by respondent; and there is evidence in contradiction. We do not, however, regard it as important to determine upon which side lies the greater weight. Petitioner, in fact, did produce a preparation by the use of chocolate so exactly like that of respondent that they were incapable of being distinguished by ordinary sight or taste. By various trade methods an extensive and valuable market for the sale of respondent's preparation already had been established when the preparation of petitioner was put on the market. It is apparent, from a consideration of the testimony, that the efforts of petitioner to create a market for Quin-Coco were directed not so much to showing the merits of that preparation as they were to demonstrating its practical identity with Coco-Quinine, and, since it was sold at a

lower price, inducing the purchasing druggist, in his own interest, to substitute, as far as he could, the former for the latter. In other words, petitioner sought to avail itself of the favorable repute which had been established for respondent's preparation in order to sell its own. Petitioner's salesmen appeared more anxious to convince the druggists with whom they were dealing that Quin-Coco was a good substitute for Coco-Quinine and was cheaper, than they were to independently demonstrate its merits. The evidence establishes by a fair preponderance that some of petitioner's salesmen suggested that, without danger of detection, prescriptions and orders for Coco-Quinine could be filled by substituting Quin-Coco. More often, however, the feasibility of such a course was brought to the mind of the druggist by pointing out the identity of the two preparations and the enhanced profit to be made by selling Quin-Coco because of its lower price. There is much conflict in the testimony; but on the whole it fairly appears that petitioner's agents induced the substitution, either in direct terms or by suggestion or insinuation. Sales to druggists are in original bottles bearing clearly distinguishing labels and there is no suggestion of deception in those transactions; but sales to the ultimate purchasers are of the product in its naked form out of the bottle; and the testimony discloses many instances of passing off by retail druggists of petitioner's preparation when respondent's preparation was called for. That no deception was practiced on the retail dealers, and that they knew exactly what they were getting is of no consequence. The wrong was in designedly enabling the dealers to palm off the preparation as that of the respondent. *Coca Cola Co.* v. *Gay-Ola Co.*, 200 Fed. 720; *N. K. Fairbank Co.* v. *R. W. Bell Manuf'g. Co.*, 77 Fed. 869, 875, 877–878; *Lever* v. *Goodwin*, L. R. 36 Ch. Div. 1, 3; *Enoch Morgan's Sons Co.* v. *Whittier-Coburn Co.*, 118 Fed. 657, 661. One who induces another to commit a

fraud and furnishes the means of consummating it is equally guilty and liable for the injury. *Hostetter Co.* v. *Brueggeman-Reinert Distilling Co.,* 46 Fed. 188, 189.

The charge of unfair competition being established, it follows that equity will afford relief by injunction to prevent such unfair competition for the future. Several acts of unfair competition having been shown, we are warranted in concluding that petitioner is willing to continue that course of conduct, unless restrained. *Hennessy* v. *Wine Growers' Ass'n,* 212 Fed. 308, 311. It remains to consider the character and extent of this relief.

Respondent has no exclusive right to the use of its formula. Chocolate is used as an ingredient not alone for the purpose of imparting a distinctive color, but for the purpose also of making the preparation peculiarly agreeable to the palate, to say nothing of its effect as a suspending medium. While it is not a medicinal element in the preparation, it serves a substantial and desirable use, which prevents it from being a mere matter of dress. It does not merely serve the incidental use of identifying the respondent's preparation, *Coca Cola Co.* v. *Gay-Ola Co., supra,* p. 724, and it is doubtful whether it should be called a non-essential. The petitioner or anyone else is at liberty under the law to manufacture and market an exactly similar preparation containing chocolate and to notify the public that it is being done. *Saxlehner* v. *Wagner,* 216 U. S. 375, 380; *Chadwick* v. *Covell,* 151 Mass. 190. But the imitator of another's goods must sell them as his own production. He cannot lawfully palm them off on the public as the goods of his competitor. The manufacturer or vendor is entitled to the reputation which his goods have acquired and the public to the means of distinguishing between them and other goods; and protection is accorded against unfair dealing whether there be a technical trademark or not. The wrong is in the sale of the goods of one manufacturer or vendor as those

of another. *Elgin National Watch Co.* v. *Illinois Watch Case Co.*, 179 U. S. 665, 674. If petitioner had been content to manufacture the preparation and let it make its own way in the field of open and fair competition, there would be nothing more to be said. It was not thus content, however, but availed itself of unfair means, either expressly or tacitly, to impose its preparation on the ultimate purchaser as and for the product of respondent.

Nevertheless, the right to which respondent is entitled is that of being protected against unfair competition, not of having the aid of a decree to create or support, or assist in creating or supporting, a monopoly of the sale of a preparation which everyone, including petitioner, is free to make and vend. The legal wrong does not consist in the mere use of chocolate as an ingredient, but in the unfair and fraudulent advantage which is taken of such use to pass off the product as that of respondent. The use dissociated from the fraud is entirely lawful, and it is against the fraud that the injunction lies. But respondent being entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the petitioner, which has shown by its conduct that it is not to be trusted. Clearly, the relief should extend far enough to enjoin petitioner, and its various agents, from, directly or indirectly, representing or suggesting to its customers the feasibility or possibility of passing off Quin-Coco for Coco-Quinine. The Court of Appeals held that petitioner should be unconditionally enjoined from the use of chocolate. We think this goes too far; but, having regard to the past conduct of petitioner, the practices of some druggists to which it has led, and the right of respondent to an effective remedy, we think the decree fairly may require that the original packages sold to druggists shall not only bear labels clearly distinguishing petitioner's bottled product from the bottled product of

respondent, but that these labels shall state affirmatively that the preparation is not to be sold or dispensed as Coco-Quinine or be used in filling prescriptions or orders calling for the latter.  With these general suggestions, the details and form of the injunction can be more satisfactorily determined by the District Court.  The decree of the Court of Appeals is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*