## HYGRADE FOOD PRODUCTS CORPORATION v. H. D. LEE MERCANTILE CO. et al.

### No. 297.

Circuit Court of Appeals, Tenth Circuit.
Jan. 2, 1931.

John S. Dean, of Topeka, Kan. (John S. Dean, Jr., and Frazor T. Edmondson, both of Topeka, Kan., and Harold H. Corbin and Edward J. Bennett, both of New York City, on the brief), for appellant.

Edwin C. Meservey and Charles M. Blackmar, both of Kansas City, Mo. (Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Hygrade Food Products Corporation brought this action against the H. D. Lee Mercantile Company, a corporation, S. V. Scott, John Lynn, Alexander Noll, Wm. Smith and Robert P. Cook to enjoin them from using the trade name "High Grade Food Stores" in connection with the manufacture, sale and distribution of food products, and for an accounting for damages and profits.

The amended complaint alleged: That the Hygrade Provision Company, Inc., was incorporated in 1914 under the laws of New York; that it engaged in the manufacture, sale and distribution of food products from that date until December, 1927; that on May 17, 1921, the Provision Company duly registered the trade-mark Hygrade in the United States patent office; that plaintiff was incorporated in December, 1927, as the successor of the Provision Company and acquired all of that company's assets, including the right to the use of the trade name and trademark Hygrade; that from 1914 on down to the date of the commencement of this suit plaintiff and its predecessor had "used the word Hygrade upon their food products," had spent many thousands of dollars in advertising such trade name in connection with food products, and had sold all classes of food products under such name throughout the United States; that by reason thereof the trade-mark Hygrade had acquired, among dealers and the public generally throughout the United States, "a meaning indicating that food products bearing such name are the products of the plaintiff"; that about June 1, 1929, the Mercantile Company induced a number of dealers in food products, including the defendants other than such Mercantile Company, in and about the cities of Kansas City, Kansas, and Kansas City and Independence, Missouri, to enter into agreements whereby the Mercantile Company purported to grant to such dealers the right to use, and such dealers agreed to use the name "High Grade Food Stores" in connection with the sales of food products to the public; that the defendants are so using the name "High Grade Food Stores" and will continue so to do unless restrained; that the use of the trade-name "High Grade Food Stores" by the defendants in the sale of their food products has caused and will cause dealers and the public generally to believe that defendants' food products are the products of the plaintiff, and to purchase defendants' products as and for the products of the plaintiff; that such alleged wrongful acts have injured the good will and trade-mark of the plaintiff in an amount in excess of $3,000 and that the defendants have realized profits from the use of such trade name in excess of that amount.

By motion to dismiss, the defendants challenged the sufficiency of the bill to state a cause of action. The trial court sustained this motion and entered a decree dismissing the bill. Plaintiff has appealed.

■■ It is well settled that "a name which is merely descriptive of the ingredients, qualities or characteristics of an article of trade cannot be appropriated as a trade-mark and the exclusive use of it afforded legal protection." Warner & Co. v. Lilly & Co., 265 U. S. 526, 528, 44 S. Ct. 615, 616, 68 L. Ed. 1161; Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 323, 327, 20 L. Ed. 581; Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 453, 31 S. Ct. 456, 55 L. Ed. 536.

Such words, however, by long use in connection with the goods of a particular trade may come to be understood by the public to mean the goods of that particular trader and thus acquire what is commonly called a secondary meaning. Although a word may have acquired a secondary meaning, it still belongs to the public in its primary descriptive sense and any person may use it, provided he does so in such a way as not to convey the secondary meaning and deceive the purchasing public.

Therefore, where a word has acquired such secondary meaning, a person, notwithstanding his general right to use such word because it is descriptive, when he offers his goods to that part of the public to whom such word has come to mean the products of another, must accompany the word with such distinguishing marks that a buyer exercising ordinary prudence will not be deceived. Richmond Remedies Co. v. Dr. Miles Medical Co. (C. C. A. 8) 16 F.(2d) 598, 602; Merriam Co. v. Saalfield (C. C. A. 6) 198 F. 369, 373; Standard Paint Co. v. Rubberoid Roofing Co. (C. C. A. 7) 224 F. 695; Barton v. Rex-Oil Co. (C. C. A. 3) 2 F.(2d) 402, 40 A. L. R. 424; Id. (C. C. A.) 29 F.(2d) 474; Photoplay Pub. Co. v. La Verne Pub. Co. (C. C. A. 3) 269 F. 730; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 674, 21 S. Ct. 270, 45 L. Ed. 365.

In order to afford grounds of relief for unfair competition, the simulation must be one which is likely to deceive the common buyer or a buyer exercising ordinary prudence. Queen Mfg. Co. v. Isaac Ginsberg & Bros. (C. C. A. 8) 25 F.(2d) 284, 288; Leschen & Sons Rope Co. v. Fuller (C. C. A. 8) 218 F. 786, 789; Wrisley Co. v. Iowa Soap Co. (C. C. A. 8) 122 F. 796; Federal Trade Com. v. Balme (C. C. A. 2) 23 F.(2d) 615, 620; Notaseme Hosiery Co. v. Straus (C. C. A. 2) 201 F. 99, 100.

The bill alleged that the trade-mark Hygrade, when used in connection with the sale of food products, has acquired a secondary meaning and, to the purchasing public, it has come to mean the particular food products manufactured and sold by the plaintiff. Upon motion to dismiss, these allegations must be accepted as true. The question remains: Has the plaintiff sufficiently alleged a simulation thereof by defendants which would deceive the common buyer or purchaser who exercises ordinary care in buying?

The bill alleged that the plaintiff had advertised and sold its goods under the trade-mark of Hygrade and had marked its food products with such trade-mark. It is not alleged that the defendants have marked their goods with a trade-mark or trade name similar to that of the plaintiff, but, rather, that the defendants have used the trade name "High Grade Food Stores" upon their stores or places of business. While it is alleged, in the nature of a conclusion, that such use of the trade name "High Grade Food Stores" is calculated to and will mislead the common buyer, the other facts alleged clearly show that this allegation is not well founded in fact. If the plaintiff has marked its goods with its trade-mark Hygrade and sold such goods as such, the purchasing public would naturally come to look for that trade-mark upon the goods or package. The mere use of the phrase "High Grade Food Stores" on a place of business, without marking the goods and packages offered for sale by a trade-mark similar to that of plaintiff, would not be calculated to deceive a person exercising ordinary prudence in the purchasing of food products.

Furthermore, while the trade-mark used by the plaintiff and the trade name and trade-mark used by the defendants (which are set out in the margin) both employ the words "high grade," one spelled Hygrade and the other High Grade, yet they are so wholly dissimilar it is inconceivable that a person exercising ordinary care in purchasing the products offered by the defendants would be deceived into believing such goods were the products of the plaintiff.

For the reasons stated, we conclude that the bill failed to state a cause of action.

The decree is affirmed.