### CARON CORPORATION v. MAISON JEURELLE–SEVENTEEN, Inc., et al.

District Court, S. D. New York.
Sept. 7, 1938.

Evarts, Choate, Curtin & Leon, of New York City (Maurice Leon, of New York City, of counsel), for plaintiff.

Hoguet, Neary & Campbell, of New York City (Worthington Campbell, and Granville Brumbaugh, both of New York City, of counsel), for defendants.

CLANCY, District Judge.

This is a motion for a preliminary injunction in an action alleging infringement of a trademark and unfair competition.

The plaintiff, Caron Corporation, has been manufacturing and selling, in bottles, a perfumed bath preparation, known as "Bain de Champagne". The defendant, Maison Jeurelle-Seventeen, Inc., has been manufacturing and selling, in bottles, a perfumed bath preparation, known as "Bain Mousseux". "Mousseux" is translated as "Sparkling".

Both of these products are intended to be used in the bath and in this respect are similar. However, the respective reactions of each with water have not been fully set forth. The defendant's product apparently conveys a sparkling or effervescence to the bath. The plaintiff does not claim a similar effect for its product and its attorney admitted on the argument that no such effect was produced.

The bottle in which the plaintiff is marketing its product is claimed to be of the champagne bottle type, and is constructed of transparent glass. In fact, the bottle and its contents are fully transparent. The bottle is wider in the middle than at the base. It has a label which almost completely encircles the base of the bottle and contains the legend "BAiN de CHAMPAGNE, CARON" on one line. The upper edge of this label rises higher above the base in the front than at the rear. In addition to the name, the label contains an artistic illustration of a bath, done in various tones of brown on white, which covers its entire surface. There is an ovate monogrammed label, in the same color scheme, attached to the base of the neck of the bottle, being part of a straplike strip, in like coloring, which circumscribes the bottle at that point. There is goldleaf immediately above this strap, completely encasing the neck and cork. The corks of the bottles offered as exhibits are not of a bulbous shape although the plaintiff's brief appears to assume that they are and some of its exhibits bearing date, 1928, illustrate such a cork.

The defendant's bottle is much larger and is constructed of translucent green glass through which the color of the contents of the bottle cannot be determined. The sides of the bottle rise perpendicularly from the base. Flush with the base of the bottle and encircling a trifle less than one-half of its perimeter is a rectangular label, bearing the words "Bain Mousseux" in red and gold letters, and the word "Jeurelle" in small print below the other two. The label is white, bearing fine

horizontal gold lines and a gold border. On the opposite side of the bottle, near the base, is a small red label bearing in white print the words "Use for—bath only." The bottle has a monogrammed label which is circular and bears the words "Maisson Jeurelle, International Building, Rockefeller Center, New York", in red letters. This monogram is white and has a gold border and a bull's eye effect made up of fine gold lines. It is sustained by a paper strap that encircles the bottle at its neck and which also has horizontal gold lines and a gold border. A short distance above the strap, the neck of the bottle is wound with gold cord which extends to the top of the bottle, holding down the ends of a chamois wrapper which covers the cork, giving it a bulbous effect.

From these descriptions, it appears that there is no similarity whatsoever in the bottles, either in size, character, color, labeling or in their general preparation, and, when beheld by the eye the difference is complete. The defendant's bottle is sold in a wicker basket, which, plaintiff claims, is a typical champagne basket. The plaintiff's article is contained in a cardboard box decorated with criss-cross lines which it claims are intended to represent or to convey the idea of a wicker basket, but this suggestion the Court finds its imagination unable to follow. The defendant's package encloses a printed slip of paper describing the product and its use in the following language: "Bain Mousseux is a bath oil of rare distinction and quality. In addition to bubbling like champagne in the water, it perfumes and softens the skin and gives it a feeling of stimulation."

■ Because of discussions between the attorneys and a belated change of attorneys by the defendant, the date on which the defendant was required to submit answering affidavits passed without such service. The time to answer the complaint had not transpired on the day the motion was argued. Nevertheless, the defendant's attorney answered "ready" and argued the motion, relying apparently entirely on the respective articles of the plaintiff and the defendant, exhibited by the plaintiff, and the plaintiff's papers. While the Court knows of no reason why the allegations in a complaint should be binding on a defendant before the time to answer has expired, since the defendant has submitted his case, we will accept the complaint as an affidavit and its allegations of fact as establishing jurisdiction of the Court and the matters involved in the plaintiff's cause of action, except as they may be modified by plaintiff's affidavits, or modified, vitiated or contradicted by the plaintiff's exhibits. City of Kankakee v. American Water Supply Co., 7 Cir., 199 F. 757; Northwestern Stevedoring Co. v. Marshall, 9 Cir., 41 F. 2d 28. Without, therefore, assuming to state the law of this case in any way to bind the trial judge, but solely for the purpose of deciding this motion, we will accept as established by the complaint, the jurisdiction of this Court and the issuance and valid assignment of the plaintiff's trade-mark and the plaintiff's right to its exclusive use.

From plaintiff's exhibit 1, annexed to the complaint, it appears that its trade-mark involved in this motion comprises the words "BAiN de CHAMPAGNE" with the "de" and the letter "i" of the first word small letters as in the form on its bottles. Its association with the label chosen by the plaintiff or its position on the bottle is not part of the trademark issued by the Patent Office. Plaintiff has submitted affidavits of its business manager in which it claims that it has sold its product continuously in interstate and intrastate commerce in the United States of America since the year 1924; that the product has been advertised in the United States since December, 1925 in certain named magazines, and that large sums have been spent on this advertising. It does not set forth the amounts expended for advertising but sets forth copies of three separate advertisements, one of which was published in February and April, 1928 and the other two respectively in March, 1928 and April and August, 1928.

■ Comparison of the titles "Bain Mousseux" and "Bain de Champagne" discloses no similarity in either appearance or sound except for the common use of the word "bain", meaning "bath". It is apparent that this word, in and of itself, as used, is not a proper trademark but is a descriptive term which is common property. Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., 2 Cir., 20 F.2d 298; Caron Corporation v. Henri Muraour & Cie, 56 App.D.C. 347, 13 F.2d 318; Oakland Chemical Co. v. Bookman, 2 Cir., 22 F.2d 930. It follows that the defendant's use of the word "Bain" could not be an infringement and in fact to hold it as such would be depriving the defendant and the public of

their respective rights to have a product properly described (Delaware & Hudson Canal Co. v. Clark, 80 U.S. 311, 20 L.Ed. 581) rather than protecting the right of the plaintiff. However, this word used in connection with any other word or words might be an element of a trademark. Selchow v. Baker, 93 N.Y. 59, 45 Am.Rep. 169; Bennett v. McKinley, 2 Cir., 65 F. 505. The plaintiff has used the word "champagne" in a combination of words which is clearly fanciful and not descriptive of its product. Although the word "champagne" was originally geographical, the Court sees no reason for holding that it has not acquired a secondary meaning which is capable of becoming the basis of a trademark under the Angostura cases, A. Bauer & Co. v. Siegert, 7 Cir., 120 F. 81 and Siegert v. Gandolfi, 2 Cir., 149 F. 100; French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247, and Baglin v. Cusanier Co., 221 U.S. 580, 31 S.Ct. 669, 55 L.Ed. 863, which, although not directly in point, as here the name is being used fancifully and not directly, illustrate that the mere fact of a geographical meaning is not necessarily a bar to its use as an exclusive trademark. From all that appears on this motion, plaintiff's assignor may have been the first to combine the words "bath" and "champagne" in a non-descriptive name for a bath oil. But, the combination of words used by the defendant is really descriptive of its product and does not approach the idea of the words used by the plaintiff. Plaintiff contends that the word "champagne" connotes a sparkling wine and that the addition by defendant of the word "Mousseux" to the title of its bath preparation invades the sense and the field of meaning comprehended by the word "champagne". It is well to note here that the defendant does not use the word "wine". "Sparkling" is a character of diverse and numerous products, one of which may be champagne, and the words, therefore, become remotely and indirectly associated, but this is the full extent of their association. Plaintiff's contention that the defendant's use of the word "Mousseux" or "Sparkling" immediately suggests "champagne", finds answer in the fact that champagne is more often referred to as bubbling than as sparkling and in the further fact that the word "sparkling", if we insist upon applying it to wine, associates itself as readily with Burgundy. Plaintiff contends that its trademark conveys to the public a connotation attributing to its bath all the enlivening properties understood to be characteristic of champagne and that "Bain Mousseux", in suggesting a sparkling bath, invades its trademark. The incorporation of the word "champagne" in the title of the plaintiff's bath preparation rather connotes luxury than anything else and its use in the title invites a suggestion that the choice of words had some such genesis. Were we to accept the plaintiff's argument, the Patent Office would, in issuing its trademark, have preempted in the plaintiff's behalf the entire field of baths to which a luxurious character is given by any preparation claiming any property found in or claimed for champagne.

■ It follows that cases cited by plaintiff to the effect that infringement may be in the suggestion and not in the actual words used do not apply and, further, those cases invariably involved articles which were not otherwise readily distinguishable. The purpose of the trademark law is not to prevent the manufacture and sale of competitive articles. Fawcett Publications, Inc., v. Popular Mechanics Co., 3 Cir., 80 F.2d 194; William R. Warner & Co. v. Eli Lilly Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161. It is intended to protect the public in its right of honest choice of competing articles and the property rights of an owner in his trademark. Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73; General Baking Co. v. Gorman, 1 Cir., 3 F.2d 891.

■ Plaintiff claims further that the defendant has attempted to convey by appearances what the plaintiff has conveyed by word. The appearance of plaintiff's bottle is more or less commonplace and not restricted to the field of wines, much less champagne. In fact, the association of the word "sparkling" with Burgundy is accented by the fact that there are sparkling Burgundies available which are sold in bottles duplicating in size, shape and appearance, the bottle used by the defendant and which also have bulbous corks. Affidavits of experts are not available to show that either plaintiff's or defendant's bottle resembles a champagne bottle, either exclusively or otherwise, nor are there any affidavits submitted in reference to the use of the type of basket in which defendant distributes its product. While it may well be that such baskets are used for champagne, it does not appear that they are not used for numerous other

products. It may have been expected that the Court would take judicial notice of the bottling and packing of champagnes and their distinctive properties, but this we may not and cannot do.

■ It, therefore, appears that the plaintiff has not clearly established that the defendant's product in its appearance and containers resembles anything which is peculiar to champagne and the Court may well conclude that the bottle, its dress and the basket are in common use not only in the sale of various wines but also in other fields. Since there is nothing in the use of words or appearances that makes a clear case of infringement, the Court, in the absence of such a showing at this stage of the proceeding, will not find that there has been an infringement by the defendant of plaintiff's trademark. Set-O-Type Co. v. American Multigraph Co., 6 Cir., 55 F.2d 800; National Commodities Co. v. Viret, 2 Cir., 296 F. 664; Lektro-Shave Corporation v. General Shaver Corp., 2 Cir., 92 F.2d 435.

■ The conclusions the Court has reached respecting the claim of trademark infringement apply with like force and effect to the claim of unfair competition. Specific instances of damage have not been set forth although plaintiff claims generally that it has undergone great expense in advertising and distributing its product in the United States. The defendant unquestionably is a going and established business concern. Plaintiff presents an affidavit by one Leverett, who wrote the defendant for "one bottle of sparkling wine bath preparation." The defendant sent its product. We do not have to say whether or not Leverett received what he asked for, but, by the admission of the plaintiff's attorney on the argument, he would not have received what he asked for if he had received the plaintiff's product which does not claim to be a sparkling wine bath. This same person applied at the counter of Bonwit Teller for a "bottle of sparkling wine bath preparation", whereupon the clerk produced a bottle of defendant's product in its bottle and basket and then called another employee by telephone to bring some $2 and $5 size bottles of "champagne bath." Another agent of the plaintiff mailed the defendant a letter requesting a large bottle of "champagne bath" and received the defendant's bottled product encased in a wicker basket. We will not accept these, especially in view of the marked dissimilarities of the products, as illustrations of an ordinary purchaser being deceived, confused or defrauded, as would be required before granting the injunction. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Howe Scale Co. v. Wyckoff, 198 U.S. 118, 25 S.Ct. 609, 49 L. Ed. 972; General Baking Co. v. Gorman, supra; Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., supra. They illustrate, rather, two cases wherein purchasers who were acting as plaintiff's agents, obtained just what they desired, the one by using words closely resembling the English translation of the name of the defendant's product and surely describing it more fully than plaintiff's wares and the other by sending a letter to the defendant (a copy of which is not attached to the affidavit) for a product described in the English words, the translation of the name on plaintiff's product, thereby creating an ambiguous situation wherein the defendant had to choose whether it should stress the words used or the firm to which the order was addressed in determining the intention of the purchaser. If either of these persons had solicited the plaintiff's product by name, their statements might be entitled to more weight. The defendant, in such an isolated and doubtful case, could not be said to be attempting deceit upon a purchaser. We are not prepared, upon the showing made, to enjoin the operation of defendant's going business. We are unable, from the scant evidence, to make any finding of fact sufficient to sustain the extraordinary remedy of a broad preliminary injunction based upon unfair competition, which should be granted only upon a showing of convincing facts. Lektro-Shave Corporation v. General Shaver Corp., supra, and cases therein cited. However, on general equitable principles, the Court will enjoin the defendant from further selling its product in response to requests for "champagne bath", for, after all, the English translation of plaintiff's title and the French title, both containing the word "champagne", should not be considered as too distinct for competitive clash, and will enjoin the use of the word "champagne" on the slip packed with the defendant's product, not because such use on a paper, which is read only after the package has been sold and opened, will, in any way, deceive the purchasing public, but rather to prevent any suggestion to over-zealous sales people to use the word "champagne" in their sales talk which

might tend, by a stretch of the imagination, to confuse a purchaser. This latter is in no way a finding against the defendant on any broad grounds but is based upon the conclusion that although its benefit to plaintiff is perhaps remote and speculative, it will not, in any way, injure the defendant who can fully describe the effect of its product in other terms and that the equities, therefore, favor the plaintiff.