**CHAMPION SPARK PLUG CO. v. SANDERS et al.**

No. 298, Docket 20222.

Circuit Court of Appeals, Second Circuit.

July 10, 1946.

On Petition for Rehearing Sept. 25, 1946.
As Amended Oct. 18, 1946.

Ward, Crosby & Neal, of New York City, and Owen & Owen, of Toledo, Ohio (Wilbur Owen and Carl F. Schaffer, both of Toledo, Ohio, and Joshua Ward, of New York City, of counsel), for plaintiff.

John Wilson Hood, of New York City, for defendants.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Champion Spark Plug Company, a well known manufacturer of spark plugs for automobiles, brought this suit against the defendants charging infringement of its trade-mark "Champion," and also unfair competition. The charge is based upon the resale by the defendants of used spark plugs of plaintiff's original manufacture while still bearing the trade-mark "Champion" and also bearing plaintiff's type or style numbers indicating that the particular spark plug on which it was placed was specially adapted for automobiles of a certain make or for a use where it might have a heat range and other characteristics suited to the seasonal or other conditions under which the car was to be operated. The used spark plugs were obtained by the defendants from dealers in second-hand materials and after being sorted to eliminate plugs too badly worn or damaged for any further use were reconditioned. This reconditioning consisted of cleaning the plugs so as to remove burned and pitted portions of the center electrodes, readjusting the side electrodes and where they were worn away welding them to new metal in order to provide proper gap spacing. It also involved cleaning and painting them so that they would look more attractive for selling.

The plaintiff's witness Sibley testified to variations in the "critical measurements"

of the plugs between those reconditioned by the defendants and those originally manufactured. He testified that the end of the porcelain insulators—known as the "petticoat"—had generally been worn away by sand blasting when the plug was reconditioned so that the insulation did not extend as far over the center electrode as it originally did and the plug was thereby a cooler plug because more of it was exposed to the air than when the insulator was extended by the petticoat. He also said that where the ground electrode had been welded the faces of the two electrodes were not parallel and that each of these changes adversely affected the heat range of the reconditioned plugs. To the layman, the physical changes seem minute. Nevertheless the trial judge found them so important that he held the retention of the word "Champion" on the reconditioned plugs as misleading and held the defendants had thereby infringed the plaintiff's trademark. But no experimental proof was offered by Sibley, nor by anyone else, that any changes in heat range resulting from the shortening of the inner electrode or abrasions of the insulation, or from the welding of the ground electrode, were sufficient to impair the commercial use of defendants' plugs or even to render them of different type numbers from those originally manufactured by the plaintiff. It is of course manifest that "Champion" plugs with shortened center electrodes, porcelain petticoats worn down, and ground electrodes somewhat altered by use are in operation on many cars and that the only difference between them and the plugs reconditioned by defendants lies in the fact that the former have not been cleaned and slightly repaired or readjusted.

The defendant's witness Kasarjian, chief engineer of the Aero Spark Plug Company, and former ignition expert of the United States Navy, testified that he had examined and tested defendants' reconditioned plugs and that the slight differences between them and the plugs as originally manufactured did not substantially affect the heat range or spark position of any plug and its functioning. Kasarjian was the only witness who made practical tests and measurements. His testimony, in the absence of any proof that de-

fendants' plugs have not worked satisfactorily, convinces us that the finding of the trial judge, that the reconditioned plugs were so altered that they could not properly be sold with the trade-mark "Champion" on them, was without substantial basis. Although the defendants' plugs which were before the court did not exactly correspond with the drawings and specifications of their original manufacture, that is true of all plugs after a relatively small amount of driving. The defendants' plugs answer the purpose for which they are purchased; otherwise they would not be in demand and this suit to prevent their use with the trade-mark indicating their first origin would hardly have been brought. Worn Champion plugs only differ slightly from their original condition and are being driven constantly in cases where no second-hand dealer has intervened to recondition them. Even if the reconditioned plugs were somewhat impaired, as the court below found, without, however, any experimental test to show it, nevertheless they were fitted to perform a useful service and no one wishing to buy them would have any ground for complaint if he knew that he was purchasing "used" Champion spark plugs, originally of certain style numbers.

The court below found that the defendants had infringed the trade-mark "Champion" by selling reconditioned plugs having different functional features from those of the plaintiff. It for that reason enjoined the defendants from selling or offering for sale, or delivering to others for sale, any spark plugs of the plaintiff's original manufacture which had been repaired, reconditioned, or otherwise treated to improve their appearance unless and until (1) all trade-marks, trade-names, type marks, and style marks should be completely removed therefrom; (2) the metal shell should be completely covered with durable grey, brown, orange, or green paint or lacquer such as Duco; (3) the word "repaired"—in capital letters—should be stamped into one face of the hex portion of the metal of a size as large as the face should permit and of a depth sufficient so that the indentations should retain enough white paint—when the white paint should have been wiped from

the surface—distinctly to display each letter of the word "repaired" in white.

It was also found that the defendants had packed a large part of their reconditioned plugs in individual containers and cartons similar to plaintiff's on which the same words plaintiff uses—"guaranteed dependable"—were printed. In view of this the trial court decreed that the defendants affix to their cartons and containers the legend:

"Used spark plug(s) originally made by Champion Spark Plug Company, repaired and made fit for use up to 10,000 miles by Perfect Process Spark Plug Co., 1133 Bedford Ave., Brooklyn, N. Y."

The decree also provided that the name and address of the defendants was to be larger and more prominent than the legend itself, but that the name of the plaintiff might be slightly larger than the rest of the body of the legend.

■ In view of the findings as to misleading cartons and containers and as to style numbers of reconditioned plugs which because not differentiated from those on the plaintiff's new plugs might mislead, the defendants not only infringed the trademark "Champion" in selling their plugs without sufficient notice that they were reconditioned and not new, but also were guilty of unfair competition.

■ While no proof was offered that the defendants' plugs were actually "palmed off" as new and original Champion plugs or that any purchaser was induced to buy those plugs relying on a representation that they were as servicable as new ones, yet the kind of merchandising employed might enable dealers to "palm off" defendants' plugs as new ones and thus to mislead the public. The decisions in Federal Trade Commission v. Winstead Co., 258 U.S. 483, 494, 42 S.Ct. 384, 66 L.Ed. 729; Warner Co. v. Lilly Co., 265 U.S. 526, 530, 44 S.Ct. 615, 68 L.Ed. 1161; and G. H. Mumm Champagne Co. v. Eastern Wine Corp., 2 Cir., 142 F.2d 499, require a finding of unfair competition under such circumstances, irrespective of any proof of "palming off" by the defendants.

The defendants appeal from the decree on the ground that they have been guilty of no unlawful conduct and that the com-plaint against them should have been dismissed. The plaintiff appeals from such part of the decree as failed to find that the defendants had committed acts of unfair competition and denied an accounting.

The changes in the original spark plugs made by reconditioning them are slight to the eye and the evidence demonstrates that the defendants' articles work well, perform a useful service and that any changes in the heat range caused by wear or reconditioning are theoretical and in practice unimportant. Aside from the slight changes in the insulation and the electrodes the defendants' plugs are completely of the plaintiff's well known manufacture. The defendants have a right to sell them as such provided they make known to the public that they are second-hand and reconditioned and that the defendants—and not the plaintiff—have repaired the original plugs. They are also entitled to sell them with the trade-mark "Champion" and the style marks indicating the engines to which they are fitted. The mark "Champion" shows their origin. The type numbers cover thread size and the size of the cylinder hole into which the plug is fitted. These sizes have not been affected by reconditioning. While the type numbers also cover the heat range, that varies with wear and there is no proof that because of this the defendants' reconditioned plugs required another type of classification for practical purposes. Anyone buying a used plug would or should understand that it would not precisely correspond with the heat range of the original. Moreover, in any case, as Sibley's testimony indicates, the selection of precisely the right plug for a particular engine can only be accurately determined by the performance of the plug in use. Record, folios 698-99.

■ It is well settled by the authorities that the defendants have a right to sell an article manufactured by the plaintiff and to say that it has been so manufactured by retaining the latter's trade-mark and style numbers to indicate the origin of the goods. If the article the defendants have sold was second-hand and they repaired it they could still retain the marks on the goods if they gave the public clearly to understand that the goods were not simply those of the original manufacturer but had been re-

paired by themselves. They have only to tell the truth, and the whole truth, and to tell it plainly. It is, therefore, unimportant whether their reconditioned spark plugs were as good as the original ones, although they seem to have been adequate for the purposes for which they were to be used, but only whether the purchaser was apprized of the real facts.

■ In the case at bar the defendants were selling goods of a manufacturer of reputation. The repairs were minor ones. They had a right to gain any advantages derived from the good name of the manufacturer so long as they made it clear that the latter was not responsible for any lack of conformity to original standards due to wear and tear or to defendants' repairs. As Mr. Justice Holmes said in Prestonettes, Inc., v. Coty, 264 U.S. 359, 368, 369, 44 S.Ct. 350, 351, 68 L.Ed. 731, when Prestonettes, Inc. had purchased Coty powder added a binder, and sold the compact as Coty's powder "Packed and Fabricated by Prestonettes Inc.":

"The defendant of course by virtue of its ownership had a right to compound or change what it bought, to divide either the original or the modified product, and to sell it so divided. The plaintiff could not prevent or complain of its stating the nature of the component parts and the source from which they were derived if it did not use the trade-mark in doing so. For instance, the defendant could state that a certain percentage of its compound was made at a certain place in Paris, however well known as the plaintiff's factory that place might be. If the compound was worse than the constituent, it might be a misfortune to the plaintiff, but the plaintiff would have no cause of action, as the defendant was exercising the rights of ownership and only telling the truth. The existence of a trade-mark would have no bearing on the question. Then what new rights does the trade-mark confer? It does not confer a right to prohibit the use of the word or words. It is not a copyright. The argument drawn from the language of the Trade-Mark Act does not seem to us to need discussion. A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. * * *

When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo. Canal Co. v. Clark, 13 Wall. 311, 327, 20 L.Ed. 581.

"* * * If a man bought a barrel of a certain flour, or a demijohn of Old Crow whiskey, he certainly could sell the flour in smaller packages or in former days could have sold the whiskey in bottles, and tell what it was, if he stated that he did the dividing up or the bottling. And this would not be because of a license implied from the special facts but on the general ground that we stated. It seems to us that no new right can be evoked from the fact that the perfume or powder is delicate and likely to be spoiled, or from the omnipresent possibility of fraud. If the defendant's rebottling the plaintiff's perfume deteriorates it and the public is adequately informed who does the rebottling, the public, with or without the plaintiff's assistance, is likely to find it out. And so of the powder in its new form."

It appears from the foregoing that the decree should be modified. Article 2 thereof holding that the defendants have infringed the plaintiff's registered trade-mark should be supplemented by a further clause that the defendants have been guilty of unfair competition in respect to their sales by reason of a failure to more plainly set forth on the cartons and containers in which their goods have been sold to the public and on the plugs themselves the fact that the repairs and reconditioning were wholly their own. Article 3 of the decree should also be modified by eliminating from (a) thereof sub-division (1) and by adding to sub-division (3) after the word "repaired" the words "or used", and by the elimination of sub-division 5 of (b). With the foregoing modifications the decree should be affirmed.

■ We think that the contention of the plaintiff that there should be an accounting of profits was properly denied. The District Court declined this relief on the ground that the defendants had attempted compliance with an order of the Federal Trade Commission. That order required the defendants to cease and desist from:

"Offering for sale, selling or delivering to others for sale to the public, any spark plug which has been used and thereafter reconditioned in any manner unless the word 'used' or 'second-hand' or 'reconditioned,' or some other word or words of similar import and meaning, have been permanently stamped or fixed on each of such spark plugs in a color in contrast to the surface to which the word is applied and of a size and in such location as to be clearly legible to the purchasers thereof after the same shall have been installed, and unless there has been plainly printed or marked on the boxes, cartons or other containers in which such spark plugs are sold or offered for sale a notice that said spark plugs are used, second-hand or reconditioned."

There is no proof that the defendants actually deceived the public by "palming off" their goods as the plaintiff's. It is impossible to suppose that the spark plugs were not known to be reconditioned when they were sold at much lower than the price obtained for new ones. The thing that might be doubtful without further clarification upon the cartons and differentiation in the appearance of the plugs was whether they had been reconditioned by plaintiff rather than by the defendants. But there evidently was an attempt to comply with the order of the Federal Trade Commission. Although we think there was not satisfactory compliance and that the decree we are requiring is necessary adequately to safeguard the public, nevertheless there was no likelihood of damage to the plaintiff or profit to the defendants due to any misrepresentation. Under the circumstances the accounting was properly denied. Saxlehner v. Neilsen, 179 U.S. 43, 21 S.Ct. 16, 45 L.Ed. 77; Durable Toy & Novelty Corporation v. J. Chein & Co., Inc., 2 Cir., 133 F.2d 853.

Decree modified in accordance with the foregoing opinion without costs to either party.

On Petition for Rehearing.

PER CURIAM.

Upon petition for a rehearing and the reply thereto the opinion in this case filed on July 10, 1946, is supplemented by providing:

1. That for Article 3(a) (3) of the decree there should be substituted the following:

3: The word Repaired or Used all in capital letters of a size as large as the face of said plugs will permit, has been stamped and baked upon the hex portion of said plugs of all sizes by an electrical hot press in a contrasting color in a manner clearly and distinctly visible on the background on the face of the metal shell of said plugs, which metal shell and the attached bushing nut shall have been completely covered by permanent aluminum paint, or other paint or lacquer as set forth in Article 2, to provide such background.

2. The decree shall permit the defendants to state on cartons and containers, selling and advertising material, business records, correspondence and other papers, when published, the original make and type numbers provided it is made clear that any plug referred to therein is used and reconditioned by the defendants, and that such material contains the name and address of defendants.

3. Article 3(b) of the decree shall be eliminated.