**LISTO PENCIL CORPORATION,**
Plaintiff,

v.

**A & W PRODUCTS CO., Inc., Defendant.**

United States District Court
S. D. New York.

June 28, 1960.

———◆———

Rosston, Hort & Brussel, New York City, for plaintiff; George Brussel, Jr., Edward Labaton, New York City, of counsel.

Morton Amster, Amster & Levy, New York City, for defendant; Henry Schweitzer, New York City, of counsel.

DIMOCK, District Judge.

■ This is a motion for an injunction pendente lite against defendant's use of the name "Sisto" and against copying the design of plaintiff's marking pencil sold under the name of "Listo".

Since 1921 plaintiff's principal business has been and continues to be the manufacture and sale of mechanical pencils. Since 1936 plaintiff has specialized in the manufacture of mechanical marking pencils No. 1620. Since 1921 plaintiff has used the name "Listo" on its products and since 1936 plaintiff's marking pencil and leads have been marketed under the name "Listo". In the industry they are generally known as the Listo pencil and leads. The name "Listo" is a trademark registered by plaintiff on March 3, 1948 with the United States Patent Office under number 512558. Both pencils and leads have achieved an excellent reputation and acceptance in the trade and among the members of the general public throughout the United States and Canada and other foreign countries where both are marketed and distributed. In the last ten years more than twenty-five million of the marking pencils and more than fifty million of the leads have been sold. The annual gross sales of each, after returns and allowances, have run between $314,000 and $421,000 for the leads and between $271,-000 and $352,000 for the pencils. It is stated without contradiction that plaintiff is the leading seller of marking pencils and leads therefor in the United States.

Plaintiff has spent an average of $50,-000 annually on periodical advertising since 1950. In over 90% of the advertisements the illustrations of the pencil in question and the package containing the leads therefor were prominently featured. In the last ten years plaintiff has spent approximately $5,000 annually in direct mail advertising. Illustrations of plaintiff's pencil and lead package were prominently featured in more than 90% of plaintiff's direct mail circulars.

In December 1959, defendant sent out to the trade samples of a marking pencil and leads. The pencil was a Chinese copy of plaintiff's and was packed one dozen in a box printed in the same black and yellow colors as used by plaintiff but bearing the name "Sisto" instead of plaintiff's "Listo". Defendant's pencils bore detachable clips of the conventional type used to secure a pen or pencil in the pocket. On the arm of this clip which ended in the usual ball was the word "Dixon" in intaglio letters so faint as to escape attention on casual inspection. As a matter of fact, the detachable clip supplied with plaintiff's pencil is of a slightly different type and bears on the band the words "Pencil No. 1620 Listo Lead No. 162" and on the arm the word "Listo". On defendant's box cover, however, the illustration shows a pencil with a clip of the type used by plaintiff rather than the type used by defendant.

The identity of defendant's packages of leads with those used by plaintiff is so close as to be ludicrous. The sizes of the boxes are identical. Each box has a checkerboard band around the top. Each box for black leads is black and each box for red leads is red. The legend on plaintiff's box reads:

LISTO

Leads

–

Listo
Pencil Corporation
Alameda, Calif.
Made in U. S. A.

while defendant's reads:

SISTO

Leads

–

Sisto
A & W Products
Co., Inc.
Port Jervis, N. Y.
Made in U. S. A.

The interior container in each box bears the identical legend

STOP

Push In

STOP

. . . . . . . . . . . . . . . . . . . .

Push In

. . . . . . . . . . . . . . . . . . . .

STOP – Turn Over

Turn Over

. . . . . . . . . . . . . . . . . . . .

To Open Push
Opposite End

. . . . . . . . . . . . . . . . . . . .

Pull Out
This Flap

Plaintiff's and defendant's pencils are identical in size and in the size of the leads which they use. Until the appearance of defendant's pencil plaintiff's was the only marking pencil to use that particular size of lead. Its diameter, .162″, gave the lead the number 162 which was replaced on defendant's product by the meaningless number 1162.

All in all, defendant's marketing of its pencil and leads was a barefaced attempt to appropriate plaintiff's good will. Plaintiff is entitled to an injunction pendente lite against the continuation of that attempt. Fancee Free Mfg. Co. v. Fancy Free Fashions, D.C.S.D.N.Y., 148 F. Supp. 825. As was said in Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 406, 40 A. L.R. 424, "Acts of unfair competition having been shown, we are warranted in concluding that the respondent is disposed to continue the same course of conduct, unless restrained."

Defendant, however, asserts its right to continue the marketing of a pencil in precisely the same form as plaintiff's and the parties have submitted to me the question whether that should be specially enjoined pending the trial.

As appears from the Fancee Free case, in a situation such as this, where there is complete appropriation of packaging and marking and product, neither palming off nor secondary meaning need be proved. I take the rationale to be that there is a presumption of fact from such circumstances that the product is being palmed off. Under the rule stated in the quotation from the Rex-Oil case above that the wrongdoer will continue his wrongdoing unless restrained, I must conclude that defendant, even if it adheres to its avowed intention to eliminate all of the offending packaging and marking, will continue to palm off the product as plaintiff's product. Plaintiff is therefore entitled to protection against that palming off.

That does not solve the problem, however, for the question of the extent of the protection still remains. Should the injunction be limited to the prohibition against palming off or should it flatly prohibit the marketing of a pencil in the form of plaintiff's? It is unnecessary to decide whether the form of plaintiff's pencil has acquired a secondary meaning. Insofar as non-functional features of defendant's pencil lend themselves to a continuance of defendant's scheme to palm it off as a product of plaintiff, I believe that the marketing of the pencil in that form should be enjoined.

As the Supreme Court said in Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 532, 44 S.Ct. 615, 618, 68 L.Ed. 1161:

"But respondent being entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the petitioner, which has shown by its conduct that it is not to be trusted. Clearly, the relief should extend far enough to enjoin petitioner, and its various agents, from, directly or indirectly, representing or suggesting to its customers the feasibility or possibility of passing off Quin-Coco for Coco-Quinine. The Circuit Court of Appeals held that petitioner should be unconditionally enjoined from the use of chocolate. We think this goes too far; but, having regard to the

past conduct of petitioner, the practices of some druggists to which it has led, and the right of respondent to an effective remedy, we think the decree fairly may require that the original packages sold to druggists shall not only bear labels clearly distinguishing petitioner's bottled product from the bottled product of respondent, but that these labels shall state affirmatively that the preparation is not to be sold or dispensed as Coco-Quinine or be used in filling prescriptions or orders calling for the latter."

Defendant says that all of the distinctive features of its pencil are functional. The distinctive features are the bluntness of the tip of the pencil, the difference in diameter of the tip from the barrel and the location of the place where the tip unscrews from the barrel at the point where the change of diameter comes. Defendant says that these features are functional in that the blunt tip is stronger than a sharp one, the change in diameter from the barrel to the tip makes the writer's grip firmer and the placing of the point where the tip unscrews at the point where the diameter changes indicates the place of junction. I find these claims unsupported. There are many pencils on the market functioning satisfactorily with sharp tips, no change in diameter and no supplementary indication of the place of junction. If emphasis of the place of junction is desirable it can be obtained by using tips of colors differing from those of the barrels.

The production and sale of defendant's pencils in a dress indistinguishable from plaintiff's constitutes a real threat to plaintiff's business. There is uncontroverted evidence that the functioning of defendant's pencil is far inferior to that of plaintiff's. Thus confusion would do plaintiff substantial harm.

Defendant must eliminate the distinctive features of plaintiff's pencil or else mark each pencil "Not a Listo Pencil" in letters three-sixteenths of an inch high of a color contrasting with that of the background.

There will issue an injunction pendente lite against continuation of defendant's packaging of its pencil and leads and the marking of such packaging in the manner above described or any other manner which would lend itself to palming off and also against defendant's marketing of its pencil in the form above described or any other form which would lend itself to palming off, unless marked "Not a Listo Pencil" in letters the size and color above stated.

Settle order on notice.