AYRES, Judge.
By this action plaintiff seeks, by injunction, to prevent the defendant and those for whom it is responsible from displaying and selling certain merchandise, namely, fishing lures, under the name of “Smith-wick,” and from displaying and selling-such merchandise in boxes bearing the name “Smithwick,” other than merchandise manufactured by plaintiff. A preliminary injunction, issued as prayed for, was, upon trial of the merits of the case, recalled and a permanent injunction refused. From a judgment thus rejecting his demands, plaintiff has appealed.
The facts constituting a basis for this action may be briefly stated. For many years, plaintiff has engaged in the manufacture of fishing lures. For a period of approximately 10 years, he has engaged in the business on a commercial scale. Only the best materials are used. The lures are made of the highest grade of white pine, for which he developed a special sealer to prevent cracking and the infiltration of moisture. The hooks are of his own design. Considerable time and expense are utilized in designing and perfecting his lures.
Plaintiff’s business has grown and prospered — over 300,000 lures are manufactured and sold annually to customers in every state. During 1961, from the many thousands of lures sold, it was necessary to replace only 17. The lures are sold and delivered in individual boxes, on the sides and tops of which are imprinted the words “Smithwick Lures.” The name and address of plaintiff’s business — “Jack K. Smithwick & Son, Shreveport, La.” — are likewise imprinted on the tops of the boxes.
The defendant owns and operates a sporting goods store in the City of Shreveport. Among the items sold by defendant are fishing lures, prominently displayed under the names of the manufacturers. During 1961, prior to the institution of this action, defendant was selling lures made by a manufacturer other than plaintiff in boxes bearing the name “Smithwick Lures.” These were displayed under a large sign indicating to the public that such lures were actually Smithwick lures. Defendant admittedly purchased 10 dozen lures which were imported from a foreign country. These lures, obtained in individual cellophane sacks, were imitations of plaintiff’s lures, and were displayed under the label indicating that they were of plaintiff’s manufacture, and were sold in boxes bearing plaintiff’s labels. Six witnesses testified to the purchase of lures thus displayed and labeled.
That the imitation lures were of an inferior quality was fully established. The lures would, after a few minutes in the water, become unbalanced from cracking and the absorption of moisture. For these reasons, a floating lure would tend to sink. The hooks and spinners were of defective materials; the tooks would bend on the slightest provocation and the spinners *198 would warp from the normal force of water pressure as the lures were cast and retrieved.
■Plaintiff’s reputation as a manufacturer of dependable merchandise was established through the use of the best materials and workmanship obtainable, and upon a policy .of honesty and fair dealing with his customers. That to permit the sale of inferior products under plaintiff’s name, in boxes bearing his labels, and under a display sign .indicating that the merchandise was of his manufacture, would damage plaintiff’s business and reputation is self-evident. The result of such a practice was best described in plaintiff’s language when he testified:
“Bad news travels just as fast as good news, and if that takes place, all of the effort, the time, the money, everything that is involved, that I have in my business today, will be destroyed overnight, because people will not buy an inferior product — not over two. The third one they will never buy. Not in the fishing tackle business. Now you men are in the fishing tackle business and you know that. You cannot sell that inferior product; not consistently. Therefore, me depending upon the fishermen to tell the quality of the bait, the fish-getting qualities of the bait, not depending upon advertising, therefore, I say that a copy of my lure that is put on the market and is not as good as mine, but that is sold as mine out of my box, will put me out of business.”
The question is whether plaintiff is entitled to the injunctive relief sought. The record does not clearly establish who placed the spurious lures in “Smithwick” boxes. They were nevertheless sold as genuine Smithwick lures; the imitation was so perfect as to readily deceive an unsuspecting purchaser.
From the facts as revealed by the record, it can only be concluded that defendant intended to sell, and was actually selling, these spurious lures to the public as genuine Smithwick lures. Defendant never indicated a willingness to desist from the aforesaid practices, not even after their disclosure was made in court. Defendant was content to rely upon its mere assertion of its lack of knowledge of the facts.
The general rule is that, while tradesmen may lawfully compete for patronage of the public, they have no right, by imitative devices or other unfair means, to mislead prospective purchasers into buying their products under the impression they are buying those of their competitors. The use of such devices or means may be enjoined. ■52 Am.Jur., p. S66, verbo “Trademarks, Ti'adenames, and Trade Practices,” § 87; Neely v. Boland Manufacturing Co., 8 Cir., 274 F.2d 195.
Where only preventative relief against the continuance of a wrong is sought, proof of actual fraud or evil intent is not essential to injunctive relief. The general rule is stated in 87 C.J.S. verbo Trade-Marks, Trade-Names, and Unfair Competition § 93, p. 334, as follows:
“Although it has been held that a fraudulent intent on the part of defendant to pass off his goods or business as and for that of plaintiff is a necessary ingredient of unfair competition, proof of a fraudulent intent is not required where the necessary and probable tendency of defendant’s conduct is to deceive the public, and pass off his goods or business as and for that of plaintiff, especially where only preventive relief against continuance of the wrong is sought or granted.”
In this connection, it is recited, in 52 Am. Jur., pp. 569-570, under “Trademarks, Tradenames, and Trade Practices,” § 88, that
“The better rule apparently is that actual fraud or evil intent is not necessarily essential to injunctive relief, but that where the consequences to a competitor are of the character mentioned, a court of equity will act, and this rule *199 has been applied in many cases. In no case is it necessary to show by direct evidence the existence of an intention to defraud. Where there is no such proof, fraud may be inferred in many cases from the fact of imitation alone, or from other circumstances.”
Equitable relief by injunction, to prevent unfair competition, is an applicable remedy. Equity jurisdiction has frequently been assumed for the protection and preservation of rights of property and the prevention of fraud or of irreparable injury, such as would exist where the establishment of the extent of damage is difficult or impossible. 52 Am.Jur., pp. 616— 619, verbo “Trademarks, Tradenames, and Trade Practices,” §§ 140, 142.
Thus, trade names will be protected against unfair use, simulation or emulation.
The protection against unfair competition by the use of another’s trade name results by the deceit or fraud which the newcomer in the business practices, not only upon the one already established in the business but also upon the public. A trade name, though not the subject of a technical trademark, will be as fully protected, as if it were such, on the ground of unfair trade or competition. New Orleans Checker Cabs v. Mumphrey, 205 La. 1083, 18 So.2d 629.
 The wrong in the instant case is the sale of the merchandise of one manufacturer as that of another. In the absence of other applicable restrictions, the imitator of another’s goods must sell them as his own production; he cannot lawfully palm them off on the public as those of his competitor. The manufacturer is entitled to the reputation which his goods have acquired, and the public is entitled to the means of distinguishing between them and other goods; protection is accorded against unfair dealing, whether there is involved a technical trademark or not. William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Neely v. Boland Manufacturing Co., supra.
The granting or refusing of an injunction is a matter ordinarily addressed to the sound discretion of the trial court. However, the rule is otherwise where a clear case for injunctive relief is presented and the requirements of the law have been complied with, and where injury would result were the apprehended acts sought to be prevented not arrested. New Orleans Checker Cabs v. Mumphrey, 205 La. 1083, 18 So.2d 629; Albrecht v. Del Bondio, 188 La. 502, 177 So. 587; Marcev v. Mandich, 158 La. 15, 103 So. 389; Yellow Cab Co. of New Orleans, Inc. v. Jones, 156 La. 837, 101 So. 216.
Thus, trade names will be protected against unfair use, simulation or imitation. Therefore, plaintiff is entitled to protection against the sale of the goods of another under his labels and display, and as his manufacture. Accordingly, the injunction should have been granted.
The judgment appealed is therefore annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed that the preliminary injunction heretofore issued be, and the same is hereby, reinstated, perpetuated, and made final; and, accordingly, the defendant, Lorants Army & Sporting Goods, Inc., its officers, agents, and employees be, and they are hereby, permanently and perpetually restrained, prohibited, and enjoined from displaying and selling, other than those actually manufactured by plaintiff, any lures under the name of “Smithwick,” and from displaying and selling, other than those actually manufactured by plaintiff, lures in boxes bearing the label of “Smithwick.”
It is further Ordered, Adjudged, and Decreed that plaintiff’s rights to sue for damages be, and the same are hereby, reserved, *200 and that the defendant be, and it is hereby, taxed with the cost of court, including the cost of this appeal.
Reversed and rendered.
Rehearing denied; BOLIN, J., dissenting.